The assignments are overruled, and the judgment affirmed.

---

In re MOORE & BRIDGEMAN.†

LE BLANC v. PARLIN & ORENDORFF CO. et al.

(Circuit Court of Appeals, Fifth Circuit. January 26, 1909.)

No. 1,790.

BANKRUPTCY (§ 440*) — APPEAL AND REVISION OF PROCEEDINGS — PETITION TO REVISE—WHEN PROPER REMEDY.

Objections by creditors of a bankrupt to an account rendered by the trustee, which seek to charge him with property as having come into his possession which was not accounted for, raise questions within the jurisdiction of the court of bankruptcy to determine summarily, and its decision is reviewable only by petition to revise in matter of law, under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

Appeal from the District Court of the United States for the Eastern District of Texas.

G. P. Dougherty, for appellant and petitioner.

U. F. Short, for appellees.

Before PARDEE, McCORMICK and SHELBY, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied March 9, 1909.

McCORMICK, Circuit Judge. For several years before the year 1906 Moore & Bridgeman, a partnership consisting of E. F. Moore and his son-in-law, F. W. Bridgeman, were rice farmers near Beaumont, Tex. They received advances from the Beaumont Rice Mills, a partnership composed of J. E. Broussard, J. M. Hebert, B. C. Hebert, M. S. Hampshire, L. Hampshire, J. A. Bordages, and E. J. Le Blanc. These rice farmers had for several years rented the land known as the "Stengele farm," on which was a dwelling house, warehouse, barn, and other improvements, which they occupied as a home for themselves and their hired labor. On this farm they put to rice about 1,000 acres. They had a large amount of team and farming implements suitable for planting and harvesting a rice crop. In January, 1906, they rented an adjoining farm, known as the "McCrimmen farm," on which there were no buildings, and which contained 280 acres suitable for being put to rice. They arranged with the Beaumont Rice Mills to furnish the seed rice necessary for planting this 280 acres, estimated to cost $500, and they arranged to have advanced to them by the Beaumont Rice Mills an additional $500 towards the growing of the crop. They prepared this 280 acres for planting, and in due time planted the same in rice, and on the 5th day of April, 1906, E. F. Moore executed and delivered to J. E. Broussard the following writing:

"Know all men by these presents: That for and in consideration of the sum of one thousand ($1,000.00) dollars, the receipt of which is hereby acknowledged, I, E. F. Moore, have this day sold, transferred, and conveyed to J. E. Broussard all that certain rice crop grown and to be grown on a certain two hundred and eighty (280) acres of land rented of J. C. McCrimmen, being a portion of the Daniel Easley survey, and being the same land that is described in a certain lease signed by J. C. McCrimmen and E. F. Moore on the 9th day of January, 1906, which lease has not been placed on record. It is understood and agreed that the said E. F. Moore shall harvest and deliver said crop of rice free of charge to the said J. E. Broussard at Beaumont, Texas."

This instrument was filed for registration on the 28th day of May, 1906, and duly registered in Book 7 of Chattel Mortgages in Jefferson county, Tex. There were about 1,000 acres of land put to rice on the Stengele farm. In July these crops were very promising, but Moore & Bridgeman were indebted to several creditors, and a little before the 16th of July, the exact date does not appear, an attachment was sued out and levied on a large portion of their team, and part of their rice crop was nearly ripe for the harvest, and the use of the team was necessary for that work. In order to dissolve the attachment and procure the restoration of the team, it was deemed best to file a voluntary petition for bankruptcy, and to obtain the appointment of a receiver or trustee in order to secure the timely harvest of the crops. On the 16th day of July, 1906, the voluntary petition was filed by Moore & Bridgeman, as partners, and by each in his individual capacity. J. E. Broussard was the manager of the Beaumont Rice Mills. Some discussion was had between him and Moore as to the expense of conducting this bankruptcy proceeding, and Broussard suggested that one of "our boys" (meaning thereby one of the younger members of his firm) would execute the office of receiver or trustee for $25 a month,

and it appears that Bordages was at first appointed receiver. What action he took, if any, is not shown by the record. There is a statement in the testimony that he was not satisfactory.

The record shows that due notice of the first meeting of creditors, to take place on the 30th day of July, 1906, was given, and that no creditor appeared, and the referee appointed the appellant and petitioner, E. J. Le Blanc, as trustee of the estate and effects of Moore & Bridgeman, as a partnership, and of E. F. Moore and F. W. Bridgeman as individuals. His testimony is to the effect that he agreed to serve for $25 a month. The property of the estate consisted of crops of growing rice and certain other personal property, threshers, binders, mules, and farming implements such as are used in the operation and management of a rice farm. At the time of the election of the trustee this property was in the possession of the bankrupts, and was left in their possession by the trustee, and they had the control and management of it during the entire harvest season. The trustee also charged E. F. Moore (bankrupt) with the superintendence and management of the harvest and placing of the crop of rice in condition for sale, giving him full authority to employ the labor and furnish the machinery necessary to harvest the crop, and to purchase all the supplies that were needed for that purpose. The trustee left the matter of harvesting the crop entirely to the judgment of Moore, who undertook to harvest it with the farming implements and other property of the estate, employing labor and purchasing supplies for that purpose. While thus employed, Moore harvested the crop growing on the 280 acres designated as the "McCrimmen tract" with the teams and property of the estate. This crop was not included in the schedules of the bankrupts filed as part of the assets of the estate. The Beaumont Rice Mills claimed it, and the trustee, assenting to the claim, permitted the company to have the rice without any order from the court with respect to it. The yield was large, and was rice of a good quality.

After the crops were harvested, and the rice taken from the 280-acre McCrimmen farm fully disposed of, the appellant and petitioner, on January 15, 1907, tendered his resignation as trustee, accompanying his resignation with a statement of his account thereto attached; and thereupon the appellees and respondents, stating their objection to the trustee's account, prayed, amongst other things, that he be required to account for all property that came into his possession and which is withheld from said report, specifying particularly the proceeds of the crop that was taken from the 280-acre McCrimmen tract, and other matters objected to in the account. Protracted hearings were had and much testimony given before the referee, who found amongst other things, that there was raised upon the McCrimmen tract 4,178 sacks of rice, and that 540 sacks were paid for water rent, and the other passed into the possession of the Beaumont Rice Mills after the same was harvested, and that the reasonable and fair market value of the rice grown upon the McCrimmen tract of land was $3.25 per sack. The referee concluded, as a matter of law, that he was without jurisdiction to charge the trustee with the value of the crop grown upon the McCrimmen tract of land.

By proper proceedings the matter was brought before the judge in bankruptcy for review, and he, having heard and considered the account of the trustee and the exceptions filed thereto by the creditors and objections urged by them to the judgment of the referee, and being fully advised in the premises, was of opinion that the trustee came into possession of the crop of rice grown on the 280 acres of land which was cultivated by the bankrupts, known as the "McCrimmen tract," and that said crop of rice was and is a part of the property of the estate of the bankrupts, and the trustee should have been charged in his account with the value thereof. He further found that there was paid to the employés and representatives of the trustee, by one Earl Keener, for threshing, the sum of $345.20, with which sum the said trustee should be charged and held responsible in his account as such trustee, and therefore ordered and adjudged that the trustee pay over and deposit to the credit of the estate of Moore & Bridgeman, bankrupts, the value of the rice referred to, and the sums collected from Earl Keener, amounting in the aggregate to $11,906.45, within ten days from the date of his order. He further ordered that the trustee, individually, pay all the costs growing out of the exceptions filed to his report and accounts and all costs of the proceedings of review.

From this order the trustee appealed. He also presented a petition for revision, both of which have been submitted to us.

It is clear that the case is not one in which an appeal will lie. There is nothing in the subject-matter of dispute, and certainly nothing in the character of the proceedings, that could be construed into a plenary suit in equity. All the circumstances and conditions material to a consideration of the case we have attempted to recite, and it seems clear to us that the matter was within the jurisdiction of the court of bankruptcy to dispose of by summary proceedings. We have carefully gone through all the testimony given before the referee, and, if the proceedings could be construed into a plenary suit in equity, it seems to us that the testimony fully supports the finding and order of the judge. It is, however, not such a suit, and the appeal must be dismissed.

On the petition for superintendence and revision we are required to take the facts as found by the court of bankruptcy, and we are clear that the judge's conclusions of law thereon and his ruling and judgment against the petitioner were correct.

Therefore the petition to superintend and revise is denied, and the judgment of the District Court stands affirmed.