### In re KUHN BROS.

### ZUTTERMEISTER v. CHICAGO TITLE & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916. Rehearing Denied May 25, 1916.)

#### No. 2288.

1. BANKRUPTCY ☞441—PROCEEDINGS—MATTERS OF LAW.

A proceeding to determine whether under the uncontroverted facts, and assuming all controverted facts to be resolved in favor of the trustee, the order approving the trustee's accounts was authorized, is one to review a matter of law under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. 1913, § 9608), giving the Circuit Courts of Appeals jurisdiction to review or revise proceedings in the inferior courts in matters of law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 914; Dec. Dig. ☞441.]

2. BANKRUPTCY ☞250(1)—TRUSTEES—DUTIES.

It is the imperative duty of a trustee of a bankrupt estate to exercise all diligence to collect the assets of the estate, and in the absence of explanation the trustee is deemed to be negligent in failing to collect assets listed in the schedules.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350; Dec. Dig. ☞250(1).]

3. BANKRUPTCY ☞369—TRUSTEES—COLLECTION OF ASSETS.

That the accounts of the receiver, who did not collect notes due the bankrupt, were O. K.'d by the principal creditor and approved by the court, is no defense to a proceeding to surcharge the accounts of the trustee for his negligence in collecting such notes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 570; Dec. Dig. ☞369.]

4. BANKRUPTCY ☞250(1)—TRUSTEES—DUTIES.

The bankrupt's schedules of his assets recited notes which were not collected. These notes were in fact secured by a mortgage, but that did not appear from the schedules, nor did the schedules show that an action to foreclose the mortgage had been instituted, wherein it was alleged that the attorney suing was the owner. *Held* that, as such allegations in the

foreclosure suit did not establish that the bankrupt was not beneficially entitled the trustee's failure to promptly collect the notes by foreclosure was not excused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350; Dec. Dig. ⬤⟿250(1).]

5. BANKRUPTCY ⬤⟿250(1)—TRUSTEES—DUTIES.

That the creditor might have discovered the existence of notes due the bankrupt, which were secured by a mortgage, and had the same avenues of information as the trustee, will not excuse the trustee's failure to promptly enforce the obligations.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350; Dec. Dig. ⬤⟿250(1).]

6. BANKRUPTCY ⬤⟿250(1)—TRUSTEES—DUTIES.

That the bankrupt's schedules did not disclose that notes listed were secured by mortgage, where it could readily have been ascertained by the trustee, as could the pendency of a foreclosure suit, will not excuse the trustee's failure to promptly foreclose and collect the notes, though the maker was insolvent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350; Dec. Dig. ⬤⟿250(1).]

7. BANKRUPTCY ⬤⟿250(1)—TRUSTEES—DUTIES.

Where the bankrupt's right to lost notes was subsequently established by the trustee, the fact that investigation of notes listed would have established that some of them were lost will not excuse the trustee's failure to promptly foreclose a mortgage securing such notes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350: Dec. Dig. ⬤⟿250(1).]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the bankruptcy of Kuhn Bros. Petition and objections by Fred J. Zuttermeister to the report of the Chicago Title & Trust Company, trustee. The petition and objections were overruled, and the report confirmed, and the petitioner petitions to review and revise the order. Order annulled, and proceeding remanded, with directions.

Vincent D. Wyman, of Chicago, Ill., for petitioner.
Sherman C. Spitzer, of Chicago, Ill., for respondent.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. On a voluntary petition in bankruptcy filed by Kuhn Bros. on March 10, 1900, respondent was appointed receiver. In May, 1900, the bankrupts filed their schedule. Under the heading "Bills of Exchange, Promissory Notes, etc.," in the list of assets, there were scheduled 15 items. Each stated a name, followed by the words "promissory notes," "principal note," "interest note," and in one instance "note and mortgage;" then followed the amount. One such item read, "James N. Tilton—notes, $3,169.27."

June 8, 1900, respondent was appointed trustee of the bankrupt estate. June 22, 1900, it filed its final account and report as receiver. This was O. K.'d by the attorneys who then and now represent peti-

tioner, and was approved October 23, 1900. No mention of the Tilton notes appears therein. The report recites, inter alia:

"This receiver further shows that Kuhn Bros. were engaged in the real estate, loan, and renting business at 88 La Salle street, Chicago; that they had been engaged in said business for a considerable time; that they had made a large number of loans to various persons; and that afterward they sold the loans, retaining in their possession the abstracts of title, insurance policies, and other papers connected with said loans. This receiver further shows that it prepared a list of the parties shown by the books of Kuhn Bros. to be indebted to that firm, and sent notices of its appointment to all of said parties, with a request to remit the amount of indebtedness; that a large number of said debtors called at this office and denied that they were indebted to said Kuhn Bros. in any sum whatsoever."

Prior to November, 1906, the trustee filed three reports, and in none of them is there any mention of the Tilton notes and mortgage. No inventory was ever filed by the receiver or by the trustee. In fact, the bankrupts owned a principal note of Tilton for $2,500 and interest notes. They had been executed by him in 1893 for a building loan, and were secured by a real estate mortgage to one of the bankrupts. In the course of business, the notes and mortgage had been sold to a customer, bought back in 1898, and delivered to an attorney for foreclosure. Foreclosure proceedings were begun in 1899 in the name of the attorney as legal owner of the notes. Neither as receiver nor as trustee did respondent have any actual knowledge either of the pendency of this suit, or of the bankrupts' interest therein or in the notes, until the end of 1906.

The bankrupts' loan register contained a statement of the transaction, with a notation that the abstract had been given to the attorney in 1899, and that the loan was being foreclosed June, 1899, by the attorneys. This register was one of hundreds of books of the estate in the possession of the trustee. The trustee began foreclosure proceedings in 1907. Without reciting the details, it is undisputed that if the trustee had made inquiries at once, and had ascertained the facts in 1900, much expense would have been saved, taxes could have been paid, avoiding forfeitures and tax sales, and a much greater sum would have been brought into the estate.

Petitioner objected to items of expenditures in the foreclosure suit in several reports of the trustee, on the ground that they were occasioned by the trustee's neglect in failing to act promptly. He further objected to the failure to charge the trustee with the amount due on the mortgage at the time of appointment, with interest, less the net amount realized, or the value of the property, less reasonable expenses of foreclosure in 1900 and taxes and operating charges, plus reasonable rental. The referee found "that said trustee is not guilty of such acts or negligence as to warrant the court in surcharging said trustee with its expenses as reported." He dismissed the petition, overruled the objections to the report, and confirmed it.

The present petition seeks to revise the order of the District Court affirming the order of the referee.

[1] 1. In the consideration of this petition, we have assumed all controverted facts as determined in favor of the respondent. That

a review thereof and of the uncontroverted facts to determine whether there is any substantial evidence to sustain the order, is a review as to a matter of law within the provisions of section 24b of the Bankruptcy Act, is well settled. Good v. Kane, 211 Fed. 956, 128 C. C. A. 454. The motion to dismiss is overruled.

[2] 2. The schedule gave notice to the trustee that the bankrupts claimed to own some notes executed by Tilton. It is the imperative duty of the trustee of a bankrupt estate to exercise all due diligence to gather in the assets of the estate, and it would seem clear that an examination of the schedule and a following up of all leads naturally suggested thereby would be the first step to be taken. In the absence of some explanation for a failure so to act, the trustee must be charged with negligence and must respond for the consequences thereof. In re Reinboth, 157 Fed. 672, 85 C. C. A. 340. In excuse, the trustee makes several contentions which we shall consider.

[3] (a) The receiver's accounts, silent as to this item were O K.'d by petitioner and approved by the court. No appeal was taken from that order. But the receiver's report did not purport to set forth that it had gathered in all of the assets of the estate; the approval thereof in no manner modified the trustee's obligations; at the best, it discharged the receiver, a mere temporary custodian, from liability for failure to get in this asset after approving its statement of cash receipts and disbursements. No basis whatsoever is afforded thereby to the trustee, the permanent officer in whom title is vested by law, for failing properly to examine the schedules and to take the necessary steps to conserve the estate.

[4] (b) The allegation in the pending foreclosure suit that the attorney was the legal holder of the notes is utterly immaterial, for, firstly, the trustee had no actual knowledge of the allegation or of the suit; and, secondly, there is no inconsistency between the allegation and equitable ownership thereof by the bankrupts.

[5] (c) The trustee cannot be excused from the performance of the duties for which it receives compensation because its beneficiaries, the creditors, have the same avenues of information open to them and fail to take advantage thereof. The creditors may, but are under no duty to, investigate and search for assets, or to suggest to the trustee possible sources of information, which the latter has at least the same opportunity of knowing. That this petitioner was the chief creditor, and could also have found out the facts in reference to the Tilton notes, neither estops him from charging the trustee with negligence nor lessens the latter's obligations to the estate. The creditor's acts and omissions furnish no measure of the diligence imposed upon the trustee.

[6] (d) Respondent's official in charge of the estate testified as follows:

"Q. What if any inquiry did you make to ascertain the whereabouts of the notes of James N. Tilton which were scheduled by the bankrupt? A. I never made any. I didn't know anything about it till 1906. Q. Did you ever look at the schedule to see what assets the bankrupt had? A. I presume I did. Q. Did you see that in the schedule? A. I don't remember seeing it, no. I may have seen it at the time."

A mere looking at a schedule and an overlooking of such an item is clear negligence. It is therefore no excuse for the failure to follow up the information that would have been acquired if the schedule had been carefully examined. Had this been done, the examination of the bankrupts, an inspection of the loan registers, and an inquiry at the attorney's office could not have failed to disclose the bankrupts' beneficial interest in the notes and mortgage.

That the schedule failed to mention the mortgage securing the Tilton note, though it gave this additional information as to one of the 15 items, or that the amount of the principal and interest was not separately stated, could not have misled the trustee; the most cursory investigation based upon the bare statement that Tilton owed the bankrupt money on notes would have led to the discovery that these notes were secured by a first mortgage and that Tilton's insolvency, therefore, did not destroy their value.

[7] That such an investigation would also have disclosed that the principal and some interest notes were lost would not have affected the situation. The bankrupts' ownership thereof, and the consequent right of the respondent to foreclose the mortgage, could have been proven in 1900 as readily as it was proven in the latter foreclosure proceedings.

The order dismissing the petition and approving the trustee's accounts must therefore be annulled, in order that the District Court or the referee may determine the issues, and charge the trustee with such losses as may be found to have been sustained by the estate through its negligence.