## CARSON, PIRIE, SCOTT & CO. v. TURNER.
### No. 6008.

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1932.

As Amended Dec. 8, 1932.

E. M. Sloman, of Detroit, Mich. (Arthur H. Ratner and Saul Sarnoff, both of Detroit, Mich., on the brief), for appellant.

E. A. Rich and L. V. Pylkas, both of Detroit, Mich. (Max Kahn and Edward A. Rich, both of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The bankrupt operated a department store at Jackson, Mich. Upon its adjudication in bankruptcy H. O. Turner was appointed receiver pending the election of a trustee. As receiver he took charge of the store and operated it until he was elected trustee. Upon his election as trustee he employed Ralph C. Paul, an auctioneer, to conduct a sale of the stock of goods over the counter for a few days, and then to sell the rest of the stock at public auction. Paul took charge of the store and conducted both sales, the auction continuing for about a week. During this time the trustee, who resided at Detroit, visited the store from time to time and kept in touch, as he claims, with the progress of the sales. The bankrupt also had some assets consisting of claims in litigation. Upon the settlement of these claims, the trustee submitted a final report of his accounts to the referee. The appellant, a creditor, objected to the allowance of the commissions claimed by the trustee and to an item of $2,013 paid to Paul for his services upon the ground that the trustee was guilty of negligence in permitting Paul to appropriate to his own use much of the valuable merchandise in the store. The objections were overruled, and, upon appellant's filing a petition for review, the referee certified his findings and conclusions, with the transcript of evidence upon which they were based, to the District Judge. Upon the hearing before the judge the order of the referee was approved. The creditor appeals under 24b of the Bankruptcy Act as amended (11 USCA § 47 (b)).

Our review of the order complained of is limited to matters of law. Such a review permits an examination of the evidence to see if there is substantial evidence to support the findings of the referee upon which the order was based. In re Kuhn Bros. (C. C. A.) 234 F. 277, 279, 280; In

re Hoyne (C. C. A.) 277 F. 668, 671; Good v. Kane (C. C. A.) 211 F. 956, 958; Johnson v. Goldstein, 11 F.(2d) 702, 703 (6 C. C. A.). The referee found as a fact that the trustee faithfully discharged his duties and was guilty of no negligence. The effect of this finding was to deny the claim made by the objecting creditor that during the auction sale Paul had removed much of the most valuable merchandise from the store without accounting for it in the settlement of his accounts.

On the point just mentioned the evidence is uncontradicted. It was shown by employees in the store that expensive ribbons, silks, linens, gloves, and other articles, including a fan the retail value of which was about $75, were taken from the store by Paul without accounting for them in any way. Some of these articles were wrapped and placed in a back room during the day, and after the closing hour in the evening, when all employees except the night watchman were gone, were taken by Paul or a member of his family to an automobile that stood at the door and carried away. The trustee attempted to excuse his failure to detect or stop the taking of this merchandise or to recover the value of it from Paul by saying that it was not called to his attention until 1925. He testified that Benham, a former employee of the company, was retained by him as financial manager, and that neither Benham nor any one else made any report to him of such matters until 1925. He further testified that he instructed Paul, when he left Detroit, to take charge of the sale, to put on a special sale for a week, and at the end of the week to have a final auction sale of whatever might be left. Benham said that he was merely office manager, had nothing to do with the sale, and that his duties were entirely clerical. Numerous other employees testified that Paul assumed full charge of the store when he came to Jackson, and that he continued in charge of it until the stock of merchandise was disposed of. Notwithstanding this evidence, the referee found as a fact that Benham was in direct charge as manager of the business, and that Paul was subservient to the authority of Benham. This finding has no support in the evidence.

Again, the referee found that none of the employees brought the removal and disposition of these goods taken by Paul either directly or indirectly to the attention of the trustee. Turner said that it was not brought to his attention until 1925. Benham said that after the episode of the fan he called the trustee's attention to it; that there were many rumors "that merchandise was disappearing from the departments during the night," and he told Turner that he thought it would be advisable to make an inquiry. The unmistakable inference to be drawn from Benham's testimony is that this conversation occurred while Paul was in charge of the store. In any event, it appears that in the summer of 1925 the appellant, through its counsel, procured affidavits from those employed in the store while Paul was in charge showing that Paul had taken considerable quantities of merchandise from the store in the manner hereinbefore indicated. These affidavits were submitted to the referee and by him submitted to Turner. Neither took any steps, though the referee found that Turner made an investigation but could not find sufficient evidence to justify a proceeding to recover the value of the property. The evidence was in the affidavits themselves, and there is nothing in the record to show that it was untrue, or that, if a judgment had been obtained against Paul, it could not have been collected.

The proper administration of the bankrupt's estate in the interest of creditors required that the trustee exercise reasonable diligence in the performance of his duties. Had he done so, it is inconceivable that he would not have learned of the practices of Paul in appropriating to his own use much of the most valuable merchandise. When evidence of that circumstance was placed in his hands, he inexcusably failed to act. In spite of this, the referee found that he had discharged his duties faithfully and approved his accounts, allowing the man who had misapplied a part of the assets a large fee for his services and allowing the trustee, who negligently failed to perform his duties, the maximum amount authorized under the acts relating to bankruptcy. We find nothing in the record to support the referee's finding that the trustee faithfully performed his duty, and we hold, as a matter of law, that the order approving his accounts based upon such finding is erroneous.

The trustee was bound, as we have said, to exercise due diligence to conserve the assets of the estate, and, if he failed to do so, and we think the evidence indisputably shows that he did, he should be made to account for any assets which were dissipated through his negligence. In re Reinboth (C. C. A.) 157 F. 672, 16 L. R. A. (N. S.) 341; In re Schoenfeld (C. C. A.) 183 F. 219; In re Moore & Bridgeman (C. C. A.) 166 F. 689;

In re Kuhn Bros. (C. C. A.) 234 F. 277; In re B. A. Montgomery & Son (D. C.) 17 F. (2d) 404, 405. The trustee cannot excuse himself upon the ground that the objecting creditor might have brought the witnesses into court and invoked the aid of the referee to compel a recoupment from Paul. The contention that the failure of the creditor so to do amounted to laches is wholly without merit. The creditor, it is true, might have taken that course, but the duty rested primarily upon the trustee, and it was also the duty of the referee, when the affidavits were brought to his attention, to see that the trustee performed his duty. Nothing was done at that time, nor has anything been done since then.

The order of the District Court is reversed and the cause remanded with directions to disallow the amounts paid to Paul for his services, to charge the trustee with the value of the goods taken by Paul in excess thereof so far as it can be ascertained, and to reconsider and redetermine, upon the basis of the conclusions herein stated, the compensation to be allowed the trustee. In determining the latter matter, it is assumed that the court will give due consideration to such efforts as may be made by the trustee to recover the value of the goods taken by Paul.