In re Bryna K. NADLER and Bernard Nadler, husband and wife, individually and jointly, Bankrupts.

The SECOND NATIONAL BANK OF NAZARETH, Plaintiff,

v.

Stephen J. MARCINCIN, Trustee, Defendant.

Bankruptcy Nos. 77-981-TT to 77-983-TT.

United States Bankruptcy Court, E. D. Pennsylvania.

Dec. 9, 1980.

---

**3.** See *1 Moore's Federal Practice*, 2nd Ed., # 0.4(1), 0.4(4).

Karl H. Kline, Easton, Pa., for The Second National Bank of Nazareth.

Allan B. Goodman, Bethlehem, Pa., for trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Plaintiff, The Second National Bank of Nazareth, a secured creditor, has filed a complaint alleging that the defendant–trustee, Stephen J. Marcincin, Esquire, should be surcharged for damages caused the Bank as a result of the trustee's allegedly negligent care of the Bank's collateral, the real estate serving as the bankrupts' residence, located at 2864 Washington Street, Easton, Pennsylvania. For reasons hereinafter given, we conclude that the trustee is not liable for any surcharge as a result of his conduct in the care of the real estate involved.[1]

On June 20, 1977, the bankrupts filed a joint voluntary petition. The defendant qualified to act as trustee on August 22, 1977. Notes of Testimony at 90 [hereinafter cited as N.T.]. Shortly thereafter, in late August 1977, the trustee visited the premises. N.T. at 93. The trustee, on this, his only visit to the premises, found them inhabited by the Nadlers (N.T. at 104, 125, 128), but in poor condition.[2] The trustee permitted the bankrupts to remain in possession of the premises. The trustee at no

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The trustee found, throughout the premises, holes in the drywall, loose wallpaper, several broken windows, graffiti on the walls, several missing drop–ceiling panels and debris on the floor. N.T. at 93–104. The bankrupts had apparently ceased routine repair and maintenance of the property. *Id.* at 93–94.

time possessed funds for the purchase of insurance or for other expenditures to be used for maintenance of the property. N.T. at 127, 143.

Although, at the time of the filing of the petition, the face amount of encumbrances against the bankrupts' residence exceeded the then fair market value thereof, the trustee did not move to abandon the premises. N.T. at 108–109. Until February 15, 1978, no party took formal action in this Court with respect to the property involved, at which time, plaintiff filed a petition praying that the plaintiff be permitted to execute against the premises and that it be abandoned by the trustee. On February 23, 1978, this Court entered an order granting the relief prayed for in that petition.[3]

The property was subsequently sold by the plaintiff at private sale for a sum slightly in excess of $32,000. Based upon a prior appraisal, plaintiff contends that, before the trustee's possession of the property, it was worth $51,000.

The plaintiff was unable, through sale of the residence, to satisfy fully the amounts of the encumbrances it held against the property and so claims to have suffered a net loss of about $10,000 because the trustee permitted the condition of the property to deteriorate and failed to take steps to prevent vandalism to the property. Hence, plaintiff now seeks to surcharge the trustee in the amount of its claimed net loss.[4]

The scope of this Court's inquiry shall be as follows:

(a) What duty, if any, does a trustee in bankruptcy owe to a secured creditor of the bankrupt?

(b) If there is some duty owed, then, under the circumstances in the case at bar, was this duty breached by any of defendant's actions (or failure to act)?

The allegations of negligence in the complaint and in plaintiff's memorandum of law are founded upon two alleged fiduciary duties of a trustee in bankruptcy, specifically: a duty to preserve the assets of the estate and a duty to liquidate expeditiously the estate.

Section 47(a)(1) of the Bankruptcy Act (11 U.S.C. § 75(a)(1) (repealed 1979)), as modified by Rule 605(a) of the Rules of Bankruptcy Procedure, provides that the trustee shall collect all of the property belonging to the bankruptcy estate and convert it to money.[5] *See* 2A *Collier on Bankruptcy* ¶ 47.04 (14th ed. 1978) ("... it is the trustee's duty, representing both the bankrupt and his creditors, to realize from the estate all that is possible for distribution among the creditors....").

It is a concomitant goal of the trustee, during administration of the bankruptcy estate, to "carefully preserve the assets in his possession, upon pain of surcharge, from deterioration or dissipation." 2A *Collier on Bankruptcy* ¶ 47.08[1] (14th ed. 1978). *Accord Carson, Pirie, Scott & Co. v. Turner*, 61 F.2d 693 (6th Cir. 1932); *In re Reinboth*, 157 F. 672 (2d Cir. 1907).

The trustee's fiduciary obligation to conserve estate assets, so as to maximize distribution to creditors, is also implied by other duties imposed upon him by the bankruptcy law, including, *inter alia*, duties to:

1) keep and submit accounts (section 47(a)(3), (5), Bankruptcy Rule 218);

2) deposit money in interest–bearing accounts (section 47(a)(2); Bankruptcy Rule 605(b));

---

**3.** Although plaintiff originally held only second and third lien positions, plaintiff purchased the property at Sheriff's sale on June 9, 1978, thereby satisfying the lienholder in first position, First Metropolitan Life Insurance Company. N.T. at 77, 9.

**4.** Based on the entire record in this case, we conclude that the only possible ground for recovery by the plaintiff would be against the trustee in his official capacity as trustee for negligence. Plaintiff has not alleged that the trustee has violated any alleged duty in a willful or deliberate manner. *See Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977).

**5.** Although Congress has since passed the new Bankruptcy Code (codified at 11 U.S.C.), the Bankruptcy Act of 1898 [referred to as the Act] is still applicable to all cases filed prior to October 1, 1979. *See* Bankruptcy Reform Act of 1978, Pub.L.No.95–598, Title IV, § 403(a), 92 *Stat.* 2591 (1978).

3) disburse funds only by check (section 47(a)(4); Bankruptcy Rule 605(c));

4) report on the financial condition of the estate (section 47(a)(12); Bankruptcy Rule 218);

5) make final reports and final accounts (section 47(a)(13); Bankruptcy Rule 218);

6) collect and reduce property to money (section 47(a)(1); Bankruptcy Rule 605(a));

7) make reports to final meetings of creditors (section 47(a)(14); Bankruptcy Rule 218).

Section 47(a)(1) of the Act also requires that trustees in bankruptcy "close up the estates as expeditiously as is compatible with the best interests of the parties in interest." Bankruptcy Rule 605(a), which supersedes subsection (a)(1) of 47, omits any reference to this duty. The Advisory Committee's Note to Rule 605 acknowledges this omission and explains, "The objective of expeditious administration underlies all provisions of these rules, and every officer is obliged to pursue this objective in the performance of duties imposed on him by the rules." Rule 903 states, "These rules shall be construed to secure the expeditious and economical administration of every bankrupt estate and the just, speedy, and inexpensive determination of every proceeding in bankruptcy."

Secured creditors, as well as unsecured creditors, may be the intended beneficiaries of the trustee's performance of his fiduciary duties and thus may seek to recover damages for breach of those obligations. This rule applies to both the duty to liquidate expeditiously and distribute the assets of the estate, and the related obligation to preserve the value of all estate assets. The trustee, as fiduciary, represents all creditors of the bankrupt, secured and unsecured. However, the trustee "primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a custodian of the property upon which they have a lien." *In re American Fidelity Corp.*, 28 F.Supp. 462, 471 (S.D.Cal.1939).

The acts, or rather omissions, which plaintiff alleges to have constituted negligence on the part of defendant–trustee, thus warranting surcharge of his accounts, include specifically: (1) failure to keep abreast of the condition of the bankrupts' residence; (2) failure to maintain the property; (3) failure to expend funds for "winterizing" the premises; (4) failure to see that the property was insured; and (5) failure to take steps to abandon the property within a reasonable period of time. All of these acts fall within the ambit of either of the two previously noted general obligations of the bankruptcy trustee. The first three alleged violations of defendant's fiduciary responsibility concern incidental obligations implied by the trustee's duty to preserve the assets of the estate.

The fourth cited incident of alleged non-performance-failure to insure the property-could also be categorized as one of the specific duties impliedly imposed upon the bankruptcy trustee by the general obligation to preserve the assets of the estate against dissipation or deterioration, so as to increase any likely dividend to creditors.

> In the preservation of such property it is obviously proper for either [the trustee or the receiver] . . . to insure it against loss. Such insurance is . . . for the preservation of the value of the property to those who may, in the administration of the estate, be found to be entitled to it.

*In re Imperial Assurance Co.*, 49 F.2d 745, 749 (8th Cir. 1931).

The fifth alleged violation is based upon a duty recognized by the courts: "[T]rustees in bankruptcy are not bound to accept property of an onerous or unprofitable character, . . . they have a reasonable time in which to elect whether they will accept or not." *First Nat'l Bank of Jacksboro v. Lasater*, 196 U.S. 115, 118, 25 S.Ct. 206, 208, 49 L.Ed. 408 (1905); *Accord Sessions v. Romadka*, 145 U.S. 29, 39, 12 S.Ct. 799, 801, 36 L.Ed. 609 (1892).

The Bankruptcy Act does not specify any standard by which the fiduciary accountability of trustees is to be governed. The courts, therefore, have drawn upon the common law for guidance. The standard of care imposed upon bankruptcy trustees, for

the execution of their fiduciary obligations, has been defined by the courts as one of "due diligence," *In re Reinboth*, 157 F. 672, 674 (2d Cir. 1907); *Carson, Pirie, Scott & Co. v. Turner*, 61 F.2d 693, 694 (6th Cir. 1932); *In re B. A. Montgomery & Sons*, 17 F.2d 404, 406 (N.D.Ohio 1927); or, more specifically, the diligence of a prudent businessman, 2A *Collier on Bankruptcy* ¶ 47.02 (14th ed. 1978).

The measure of diligence has also been defined by the Court of Appeals for the Tenth Circuit:

> Generally, the standard is the exercise of due care, diligence, and skill both as to affirmative and negative conduct. Where the trustee is negligent or willful and fails to meet the standard of care required of him, he is liable for loss. The standard or measure of care, diligence and skill is that of an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view.

*In re Johnson*, 518 F.2d 246, 251 (10th Cir. 1975), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975). "A trustee in bankruptcy may be held liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, *taking into consideration the discretion allowed." Sherr v. Winkler, supra* at 1375 (emphasis added).

Thus far, we have defined the relevant obligations and the standard of conduct which govern the fiduciary accountability of bankruptcy trustees. Now we must apply these guidelines to the facts of the instant case to determine if the conduct of defendant was negligent.

█ Plaintiff has charged that defendant neglected his duty to maintain the subject premises. In so far as this duty of maintenance requires the expenditure of money, defendant cannot be found at fault. It is clear that the estate had no funds whatsoever. N.T. at 127, 143. The residential property of the bankrupts at 2864 Washington Street was the only significant asset remaining in the estate. For the same reason, defendant could not have taken steps to "winterize" the property. Nor could defendant trustee have purchased any insurance. Thus, to the extent that damage to the premises resulted solely from failure to take measures which required the outlay of money, we conclude that defendant is not responsible therefor.

It follows, then, that the trustee could not have been expected, under the circumstances, to keep the secured creditors supplied with periodic reports of the condition of the property. Presumably, in order to have made such periodic reports, visits to the premises by the trustee or someone employed by him would have to have been made. Again, the trustee could not have been expected to expend time which would not eventually or potentially have benefited general creditors of the estate. We further conclude that the trustee acted reasonably in permitting the bankrupts to continue their occupancy of the premises (*see* N.T. at 111), and accept his testimony that the continued occupancy of the premises by the bankrupts would serve as a means of assuring at least minimal maintenance.

Three different creditors had an interest in the safekeeping of the residential property -- plaintiff, First Metropolitan Life Insurance Company and Albert and Carmella DeMarcantonio. Each of these parties either knew or should have known of these circumstances and could have, at any time, taken legal steps to protect their own interests. This they failed to do, although any of them, including the plaintiff, could have moved for relief at any time after the bankruptcy filing and before February 15, 1978, when plaintiff did eventually act.

█ The only remaining question is whether the trustee should have moved, sooner than did the plaintiff, to abandon the property or attempt to sell it free and clear of liens. The trustee testified that he was uncertain whether all of the encumbrances against the property were valid, thereby leaving open the question, in the trustee's opinion, of whether equity for general unsecured creditors existed. N.T. at 108 111.

We conclude, upon review of all the testimony (including the credibility of the trustee as a witness) and other evidence presented, that the trustee, in good faith, attempted to ascertain whether the facts and the law permitted him to avoid the lien held by Albert and Carmella DiMarcantonio, and, therefore, in his discretion as trustee (*see Sherr, supra*), did not move immediately to dispose of the real estate. See N.T. at 108–111.

For all of the above reasons, and under all of the circumstances, we conclude that the trustee did not act negligently and is therefore not liable to the plaintiff for negligence.