**In re THU VIET DINH and Quy Hoang Dinh, Debtors.**

**Patricia S. FOX, Plaintiff,**

**v.**

**Charles Thomas ANDERSON and Western Surety Company, Defendants.**

**Bankruptcy No. 8408155SC.**

**Adv. No. 870802SC.**

United States Bankruptcy Court, S.D. Mississippi.

Oct. 14, 1987.

Woodrow W. Pringle, III, Gulfport, Miss., for Patricia S. Fox.

Paul J. Delcambre, Jr., Page, Mannino & Peresich, Biloxi, Miss., for Charles Thomas Anderson.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motions for summary judgment filed by both the plaintiff, Patricia S. Fox, and the defendants, Charles Thomas Anderson and Western Surety Company, the Court hereby finds, orders and adjudicates as follows, to-wit:

### I.

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This case was commenced in the United States District Court for the Southern District of Mississippi, but was referred as a related proceeding to this Bankruptcy Court for a final determination pursuant to 28 U.S.C. § 157(c)(2). The plaintiff and the defendants have agreed through their respective attorneys of record that there are no material factual issues in dispute and, as such, have further agreed that this Court might decide this proceeding on the basis of the pleadings, the discovery conducted, and the exhibits,

affidavits, etc., that were appended to the motions for summary judgment. In essence, this proceeding is being decided by consent without the presentation of live testimony, but exclusively on the consideration of the motions for summary judgment filed by the parties.

## II.

### FINDINGS OF FACT

The plaintiff, Patricia S. Fox, and her former husband, Melvin Earnest Fox, hereinafter referred to singularly as plaintiff for purposes of convenience, acquired a convenience store from General Host Corporation on December 11, 1981. The store was located on real property described as follows, to-wit:

The North Two Hundred (200) feet of Lots Five (5) and Six (6), R.F. Harrison Addition, City of Gulf Port, Harrison, County, Mississippi, as per the map or plat thereof on file and of record in the Office of the Chancery Clerk of the First Judicial District, Harrison County, Mississippi.

In connection with this acquisition, the plaintiff executed a deed of trust in favor of General Host Corporation in the principal sum of $47,500.00.

On May 17, 1982, the plaintiff conveyed the property to Luong Vu Dinh and wife, Lien Le. In connection with this transaction, the grantees, Luong Vu Dinh and Lien Le, executed a deed of trust in favor of the plaintiff in the principal sum of $70,000.00. As a result of a domestic relations proceeding, the plaintiff's former husband assigned his interest in this deed of trust to the plaintiff.

On October 26, 1983, Luong Vu Dinh and Lien Le conveyed the convenience store property by quitclaim deed to Thu Viet Dinh, and wife, Quy Thi Hoang (Dinh), the debtors herein. In connection with this transaction, Thu Viet Dinh and Quy Thi Hoang (Dinh) executed a deed of trust in favor of Luong Vu Dinh and wife, Lien Le, in the original principal sum of $120,000.00. The promissory note, secured by this deed of trust, was apparently a "wrap around" promissory note encompassing the indebtedness owed by Luong Vu Dinh and Lien Le to the plaintiff. To the understanding of the Court, the "wrap around" effect of the promissory note did not extend to the indebtedness owed by the plaintiff to General Host Corporation. The note and deed of trust evidencing and securing the General Host Corporation indebtedness was subsequently assigned to Circle K Corporation.

In order to avoid a foreclosure of the deed of trust that they had executed in favor of Luong Vu Dinh and Lien Le, the debtors herein, Thu Viet Dinh and Quy Thi Hoang (Dinh), filed a voluntary Chapter 7 bankruptcy case in the Southern District of Mississippi in the above styled and numbered cause on October 3, 1984. The defendant herein, Charles Thomas Anderson, hereinafter referred to as trustee or defendant, was appointed as trustee of the bankruptcy estate.

## III.

On November 8, 1984 a first meeting of creditors was held pursuant to 11 U.S.C. § 341(a). At that meeting the defendant trustee inquired of the debtors, as well as, their attorney as to whether insurance was in effect covering the convenience store. The defendant was advised not only by the debtors, but their attorney, that the convenience store was insured. At that time, these statements were correct in that there was a hazard insurance policy providing coverage for the property which had been issued by American Liberty Insurance Company on December 30, 1982, for a term of three (3) years. Sometime later, on or about January 7, 1985, a notice of cancellation of the insurance policy was mailed by certified mail to the designated insureds, Luong Vu Dinh and wife, Lien Le, as well as, the designated loss payees, Patricia Fox and Melvin Fox. The notice advised that the policy was being canceled for non-payment of the premium, effective January 19, 1985. A copy of the cancellation notice was sent to the debtors herein, although not by certified mail. No notice of the cancellation was sent to the trustee. (See affidavit of Roy Martin, President of

Southern Insurance Agency, Inc. of South Mississippi, dated September 8, 1987.)

The plaintiff denies that she received the notice of cancellation from the insurance agency, and states to the contrary that she became aware that the insurance coverage had expired only after the convenience store building was destroyed by Hurricane Elena on September 2, 1985. The plaintiff has therefore alleged that the defendant trustee is liable to her because he failed to maintain insurance coverage on the convenience store during his tenure as trustee. She seeks damages from the trustee and his surety, the defendant, Western Surety, for the sum of $54,795.28, which represents the balance of the indebtedness owed to her plus interest, expenses and attorney's fees.

During the course of the bankruptcy case, the plaintiff was involved in litigation in this Court on at least two occasions. The first involved a proceeding filed by the debtors and the trustee against the plaintiff to enjoin the post-petition foreclosure of the deed of trust executed by Luong Vu Dinh and wife, Lien Le, in favor of the plaintiff. The proceeding resulted in the foreclosure being stayed as a result of the provisions of 11 U.S.C. § 362(a). Thereafter, following a recommendation of the trustee, the plaintiff filed a complaint seeking to lift the automatic stay so that she might be permitted to reinstitute the foreclosure. This proceeding was concluded with the execution of an agreed order, signed by the plaintiff's attorney, among others, to the effect that the property would be listed for sale by the trustee. The sale was to be free and clear of liens with the interest of the plaintiff to attach to the sales proceeds. The issue of insurance coverage, or the lack thereof, was never raised by the plaintiff in either of these proceedings.

Concerning the trustee's ability to purchase insurance, had he known that the cancellation had occurred, the parties have agreed that there was cash on hand in the trustee's account as of November 14, 1984 in the sum of $1,705.61. This amount was increased to $3,252.48 during the adminis-tration of this case, but the exact deposit dates are unknown to the Court. There was one unsecured creditor listed in the debtors' schedules, having a claim in the sum of $5,000.00. Comparing the value of the convenience store as reflected in the debtors' schedules to the total indebtedness secured by the three deeds of trust encumbering the store, it appears that certain creditors, excluding Circle K Corporation but perhaps including the plaintiff, would have only partially secured or unsecured deficiency claims rather than fully allowed secured claims. See 11 U.S.C. § 506(a). Although the debtors claimed only a $500.00 exemption in their cash on hand, the Court does not know whether their exemptions could have been enlarged to cover all of the proceeds in the trustee's hands. The source of the funds in the trustee's account is unknown. Regardless, the Court is of the opinion that the trustee was not required by any known authority to utilize the nominal funds in his account, which were obviously subject to the claims of other creditors and parties in interest, to acquire insurance to protect the interest of one secured creditor.

The responsibilities and duties of a trustee, in a factual situation such as this, will now be examined.

## IV.

### CONCLUSIONS OF LAW

The duties of a Chapter 7 trustee are defined by statute in 11 U.S.C. § 704, the provisions of which are set forth herein below, to-wit:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

■ In addition to the statutory duties enumerated hereinabove, the trustee is considered to be a fiduciary of the secured creditors with the duty to exercise reasonable care as custodian of the properties which serve as collateral for the secured claims. A reorganization case, filed under Chapter X of the Bankruptcy Act, speaking exhaustively on this subject, is *Sherr v. Winkler*, 552 F.2d 1367 (C.A. 10th 1977), where the following comments are found:

A trustee appointed and serving in a reorganization proceeding is a fiduciary who has an obligation to treat all parties fairly. *Wolf v. Weinstein*, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). The standard applicable to the surcharge of a bankruptcy trustee is negligence. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

*In Re Johnson*, 518 F.2d 246 (10th Cir.1975), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975), held that the standard of care for a bankruptcy trustee is the exercise of due care, diligence and skill both as to affirmative and negative conduct; and that the standard or measure of care, diligence and skill is that of an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with similar objects in view.

*Id.* at 1374.

*Mosser v. Darrow, supra*, established the rules that a trustee or receiver in bankruptcy is (a) not liable, in any manner, for mistake in judgment where discretion is allowed, (b) liable *personally* only for acts determined to be willful and deliberate in violation of his duties and (c) liable, in his official capacity, for acts of negligence....

Thus, a trustee in bankruptcy is not to be held personally liable unless he acts willfully and deliberately in violation of his fiduciary duties. A trustee in bankruptcy may be held liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed.

*Id.* at 1375.

Notwithstanding the above and foregoing, it is a fundamental concept in bankruptcy that a trustee's primary duty is to the unsecured creditors rather than to the secured creditors. *See, In re Nadler*, 8 B.R. 330 (Bankr.E.D.Pa.1980). The secured creditors, for the most part, should be able to look to their collateral for satisfaction of their claims. If there is no equity in the collateral for the bankruptcy estate or if the property is burdensome to the estate, the trustee generally abandons the property pursuant to 11 U.S.C. § 554(a), an uncomplicated ministerial act that occurs on numerous occasions in literally thousands of cases. Because the total debt encumbering this property exceeded its scheduled value, it appears that abandonment would have been the order of the day; but as noted hereinabove, when the issue was raised on the filing of the plaintiff's complaint seeking relief from the automatic stay, all of the parties, including the

plaintiff and the trustee, agreed that the property should be listed for sale by the trustee.

On a number of occasions, the plaintiff complains that the trustee should have made a more diligent inquiry as to the existence of insurance coverage, and that he should have demanded that a copy of the insurance policy be produced for inspection. These complaints are unfounded. The trustee did inquire of the debtors and their attorney as to whether the convenience store was insured. He was informed, under oath, that the property was insured, which was absolutely correct at the time that the representations were made. Had he demanded production of the policy, it could have been produced because it was in effect at least until January 19, 1985, the effective date of cancellation. The Court has seen nothing to contradict the affidavit of Roy Martin which verifies that the insurance policy had been issued by American Liberty Insurance Company through his insurance agency, naming Luong Vu Dinh and wife, Lien Le, as the insureds, and the plaintiff and her former husband as the loss payees. Apparently, the trustee was the only party that was not notified of the cancellation of the policy. From all appearances, there was nothing more that the trustee could have done insofar as verifying that insurance coverage was in effect, at least at the time of the first meeting of creditors. This proceeding narrows to the consideration of the question of whether the trustee had a continuing duty to insure that insurance coverage was maintained on the plaintiff's collateral throughout the entire administration of the bankruptcy estate.

Ordinarily, a secured lender is an institutional creditor abundantly familiar with the necessity of insurance protection for its collateral. Unfortunately, this was not the case in the instant proceeding. On many occassions in a bankruptcy context, when a secured creditor is confronted with the expiration of insurance covering collateral, that creditor seeks relief immediately from the bankruptcy court so that the collateral can be preserved and protected. Generally, this comes in the form of a motion requesting that the automatic stay, activated by 11 U.S.C. § 362(a), be lifted or modified. If insurance coverage cannot be obtained by the debtor to adequately protect the secured creditor's interest in the collateral, and some other form of insurance coverage is not available such as single interest protection, the Court almost always will provide relief.

The secured creditor must exercise reasonable diligence to protect the property serving as security. The trustee must also exercise diligence to conserve the assets of the bankruptcy estate, but he is not relegated to the role of a "babysitter" for the secured creditors. The Court accepts the standard of conduct outlined in the case of *In re Reich*, 54 B.R. 995 (Bankr.E.D.Mich. 1985), a case relied upon by the plaintiff herein. At the same time, however, this Court strenuously disagrees with the outcome of that decision, being of the opinion that the standard of conduct was stretched beyond reason and practicality. For guidance, this Court has looked to the case of *In re Peckinpaugh*, 50 B.R. 865 (Bankr.N. D.Ohio 1985), wherein the Court, considering the duties owed to the secured and unsecured creditors by the trustee, stated as follows:

Thus it is clear that in a Chapter 7 case the Trustee's duty is to liquidate assets and to preserve them until the time they are disposed of but at no time does he have a duty to manage assets, which have no value to the estate, for the benefit of secured creditors.

To find in favor of Peoples Bank would create two situations not intended by the Bankruptcy Code. First it would shift the Trustee's role from custodian to investment manager *thereby encouraging secured creditors to avoid the responsibility for their investments.*
*In re Peckinpaugh*, 50 B.R. at 869 (Emphasis added).

The court in *Geo. Benz & Sons v. Lovett (In Re Schwen's Inc.)* 19 B.R. 681, 694 (Bankr.D.Minnesota 1981) held that "secured creditors have a duty and responsibility to monitor the bankruptcy proceedings and to keep informed of the

action taken with respect to property in which they claim an interest." Peoples Bank had a right to file for relief from stay or abandonment in 1980 but instead chose to let the Trustee hold the property for two years. The court does not express an opinion as to whether that arrangement was by agreement, lack of knowledge of the bankruptcy process or both. The court does agree with the decision in *Schwen's* that found that a secured creditor cannot remain silent with knowledge of the Trustee's actions and not act upon it and then be heard that the Trustee made the wrong decision.

*Id.*

 The debtors and the plaintiff were mailed notices of the cancellation of the insurance policy months after the first meeting of creditors had been concluded. Although the plaintiff denies having received her notice, clearly no one advised the trustee of the cancellation. At the time of the trustee's inquiry, the insurance coverage was to be in effect up and until December 30, 1985, a date subsequent to the hurricane loss which occurred, as mentioned hereinabove, on September 2, 1985. The Court is of the opinion that the trustee had no reason to make further inquiry concerning the insurance coverage between the date of the first meeting of creditors and the date of the loss, particularly since the plaintiff was actively involved in at least two proceedings being litigated in the bankruptcy court.

As to whether the trustee should have attempted to obtain insurance coverage with the meager sums of money that were on hand in his trustee's account, the Court is of the opinion that he had no reason to purchase coverage since he was of the opinion that coverage remained in effect. Under ordinary circumstances, a prudent secured creditor would have ascertained the status of the insurance coverage. On determining that the coverage had expired, that creditor would have acquired insurance and would have added the cost of same to the existing indebtedness. This is contemplated precisely in the deed of trust executed in favor of the plaintiff. See *In re Nadler,* supra.

Considering all of the relevant circumstances in this case, including the reasons cited hereinabove, this Court concludes that the trustee did not act negligently; and, as such, neither the trustee nor his surety are liable to the plaintiff for damages.

It Is, Therefore, Ordered and Adjudged that the motion for summary judgment filed by the defendants, Charles Thomas Anderson and Western Surety Company, is well taken and is hereby sustained. The complaint filed by the plaintiff, Patricia S. Fox, against the aforesaid defendants in the above styled adversary proceeding shall be and is hereby dismissed with prejudice. All costs accrued by virtue of this proceeding are taxed to the plaintiff.