KEITH, Circuit Judge.
 

 This appeal arose from a Chapter XI petition filed by the defendants-appellees, Robert L. Weaver, John C. Weaver, John C. Weaver & Sons, a partnership and Weaver Farms, also a partnership. The United States District Court for the Western District of Tennessee held that the defendant-appellees’ debt to the plaintiff-appellant, Ford Motor Credit Company (“FMCC”), was dischargeable under Section 17a(3) of the Bankruptcy Act of 1898, as amended; that FMCC was an unsecured creditor; and that Robert Weaver was not personally liable.
 

 For the reasons below, the judgment of the district court is affirmed in part and reversed in part, and this case is remanded to the district court for further proceedings consistent with this opinion.
 

 Facts
 

 Weaver Farms is a partnership whose co-owners are John C. Weaver and Robert L. Weaver. On October 25, 1974, Weaver Farms purchased two Ford tractors and other farm equipment from Cleveland Ford Tractor, Inc. (“CFT”). The terms of this purchase were included in a pre-printed retail installment contract. One provision of that contract indicated that the contract would be assigned to FMCC. FMCC’s name appeared in the upper-left corner of the contract. The contract did not, however, include FMCC’s address.
 

 Eugene Tarsi, the president of CFT, executed the contract on CFT’s behalf. William Maloney, the farm manager of Weaver Farms, obtained the contract from CFT and mailed it to Robert Weaver. Weaver executed the installment contract on behalf of Weaver Farms and mailed it to Maloney. Maloney subsequently delivered the fully executed contract to CFT. CFT was located in Cleveland, Mississippi. Robert Weaver, however, resided in Memphis, Tennessee.
 

 Weaver Farms’ address was improperly listed on the installment contract as Rt. 1, P.O. Box 90, Tutwiler, Mississippi. Tutwiler is in Tallahatchie County, Mississippi. The equipment, however, was located on Weaver Farms’ property in Sunflower County, Mississippi.
 

 On January 8,1975, CFT filed a financing statement in Tallahatchie County, Mississippi. The financing statement listed CFT as the secured party and stated that CFT’s address was P.O. Box 219, Cleveland, Mississippi 38732. The financing statement covered two Ford tractors, a cotton picker and a Greenline disc. Subsequently, CFT assigned the October 1974 installment contract to FMCC.
 

 CFT is a wholly-owned subsidiary of Ford Tractor Company. Ford Tractor Company and FMCC are wholly-owned subsidiaries of Ford Motor Company. FMCC frequently purchases commercial paper from CFT. In fact, FMCC has a right of first refusal on the commercial paper that CFT creates. Customers occasionally leave installment payments and extension agreements at CFT which are intended for FMCC. CFT then forwards these documents to FMCC.
 

 On February 27, 1975, Weaver Farms, Robert Weaver, John C. Weaver, and John C. Weaver and Sons filed Chapter XI petitions in the Bankruptcy Court for the Western District of Tennessee. On that same date, the bankruptcy court appointed Robert Weaver as the debtor in possession. Weaver Farms’ Chapter XI petition listed FMCC as a secured creditor with a security interest in two Ford tractors and a “24 foot” disc. The petition also indicated that FMCC’s address was P.O. Box 219, Cleveland, Mississippi; however, this was CFT’s address. FMCC’s correct address was P.O. Box 4685, Greenville, Mississippi.
 

 The bankruptcy court mailed notice of the bankruptcy proceedings to the listed creditors sometime before April 21, 1975, the last day on which creditors could file
 
 *455
 
 complaints. The court mailed the notice to FMCC at the address listed on the Chapter XI petition. FMCC claims, however, that it did not learn of the Chapter XI proceedings until November 1976.
 

 On March 17, 1975, Maloney purchased another tractor purportedly on behalf of Weaver Farms. This March 1975 purchase was evidenced by a retail installment contract. CFT also assigned this contract to FMCC. The financing statement covering this purchase was filed in Tallahatchie County on April 18, 1975. The parties purportedly used the same method of execution as with the first installment contract. This March 1975 purchase, however, occurred after the filing of the Chapter XI petition and after the appointment of Robert Weaver as debtor in possession. Robert Weaver denied that he signed the second installment contract, and FMCC was unable to prove Robert Weaver’s signature. In fact, the bankruptcy court found that the second installment contract contained a forgery of Robert Weaver’s signature.
 

 The creditors approved a Plan of Arrangement (“Plan”) on January 22, 1975. Under the Plan, the debtors would transfer certain assets to Union Planters National Bank (“Union Planters”), including the farm equipment at Weaver Farms. In exchange, Union Planters would transfer $1,500,000 to the debtors, which would be used to fund the Plan. The creditors would then be paid from this fund. The bankruptcy court approved the Plan and discharged the debtors on March 20, 1975.
 

 Robert Weaver, as debtor in possession, transferred Weaver Farms’ assets to Union Planters in accordance with the Plan. Union Planters, however, did not take possession of the equipment purchased under either the October 1974 contract or the March 1975 contract. Union Planters notified the debtors’ attorney that it would not take possession of this equipment. Thereafter, Union Planters conducted a liquidation sale which did not include the equipment.
 

 The equipment purchased under the October 1974 and March 1975 installment contracts could not be located after the liquidation sale. As of 1977, FMCC had been unable to locate this equipment.
 

 1. Dischargeability of the Debt to FMCC
 

 A confirmation of an arrangement will discharge a debtor from all unsecured debts and liabilities except those which are non-dischargeable pursuant to Section 17 of the Bankruptcy Act of 1898 (“Bankruptcy Act”). Bankruptcy Act, § 371, as amended, 11 U.S.C. § 771 (repealed).
 
 [1]
 
 Section 17a(3) of the Bankruptcy Act prevents the discharge of a provable debt which has not been duly scheduled with the creditor’s name. 11 U.S.C. § 35(a)(3) (repealed).
 
 [2]
 
 If the creditor had notice or actual knowledge of the bankruptcy proceedings, however, Section 17a(3) allows a provable debt to be discharged even if the debt was not duly scheduled.
 
 Id.
 
 Thus, a provable debt is discharged under Section 17a(3) provided the debt was duly scheduled or the creditor had notice or actual knowledge of the bankruptcy proceedings.
 

 
 *456
 
 The bankruptcy court held that Weaver Farms’ October 1974 debt to FMCC was dischargeable pursuant to Section 17 of the Bankruptcy Act. The debtors listed FMCC as the creditor on the Chapter XI petition. However, the petition listed CFT’s address and not FMCC’s address. Nevertheless, the bankruptcy judge concluded that the October 1974 debt was duly scheduled. In so holding, the bankruptcy court relied upon
 
 Kreitlein v. Ferger,
 
 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184 (1915). In
 
 Kreitlein v. Ferger,
 
 the Supreme Court held that a debt was duly scheduled even though the creditor’s street address was omitted from the schedule. Moreover, the bankruptcy court held that the March 1975 debt was not a provable debt because the March 1975 installment contract contained a forgery of Robert Weaver’s signature.
 

 On appeal, the district court affirmed the judgment of the bankruptcy court. The court agreed with the bankruptcy judge that the incorrect address for FMCC was not fatal to the discharge. The court noted that the incorrect address was listed inadvertently.
 

 On this appeal, FMCC argues that Weaver Farms’ debt payable to FMCC was not discharged because that debt was not duly scheduled. FMCC also argues that it had no notice or actual knowledge of the Chapter XI proceedings. We will address each argument separately.
 

 A. Whether the October 1974 Debt to FMCC was Duly Scheduled.
 

 A debt is duly scheduled if the debtor complies with the provisions of Section 7a(8) of the Bankruptcy Act. 11 U.S.C. § 25(a)(8) (repealed).
 
 [3]
 
 Section 7a(8) requires the debtor to list his creditors’ residences or places of business. If the debtor does not know a creditor’s address, Section 7a(8) requires the debtor to state this fact on the schedule.
 

 FMCC argues that the October 1974 debt was not duly scheduled because the schedule did not list FMCC’s correct address. We agree.
 

 Courts have not adopted a per se rule as to what constitutes a duly scheduled debt.
 
 See Kreitlein v. Ferger,
 
 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184. Instead, whether a debt is duly scheduled usually depends upon the facts of each case.
 
 See, e.g., King v. Harry,
 
 131 F.Supp. 252 (D.D.C.1955);
 
 Bartlett v. Taylor,
 
 209 Mo.App. 612, 238 S.W. 141 (Ct.App.1922). In deciding whether a debt is duly scheduled, the extent to which the schedule fulfills the purpose of Section 7a(8) of the Bankruptcy Act is a significant factor. The purpose of the scheduling requirement is to enable creditors to receive timely notice of bankruptcy proceedings which may affect their interests.
 
 See
 
 1A
 
 Collier on Bankruptcy,
 
 ¶ 17.23 at 1686.2 n.21 (14th ed.). Consequently, an error in listing a creditor’s residence or address does not necessarily cause the debt to not be duly scheduled.
 
 See, e.g., Kreitlein,
 
 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184.
 

 Certain errors made in listing a creditor’s address do not preclude a determination that the debt has been duly scheduled. A debt may, in certain circumstances, be duly scheduled where the bankrupt debt- or lists the town, city, or county correctly but omits the street and number.
 
 See, e.g., Kreitlein,
 
 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184;
 
 Dill v. Hamilton,
 
 73 Cal.App.2d 881, 167 P.2d 497 (Ct.App.1946). If the creditor’s street, city, town or state is listed incorrectly, however, the debt is not duly
 
 *457
 
 scheduled.
 
 A & M Records, Inc. v. M. V. C. Distributing Corp.,
 
 471 F.Supp. 980 (E.D.Mich.1979);
 
 In re D’Alessio,
 
 24 F.Supp. 563 (S.D.N.Y.1938);
 
 Behymer Corp. v. Steffe,
 
 400 S.W.2d 457 (Mo.App.1966);
 
 Van Gilder v. Barnes,
 
 288 Mich. 492, 285 N.W. 35 (Mich.1939);
 
 Ward v. Meyers,
 
 265 Ark. 448, 578 S.W.2d 570 (Ark.1979);
 
 See generally
 
 Annot., 68 A.L.R.2d 955 (1959). It is unlikely that a creditor will receive notice of the bankruptcy proceedings if the schedule lists an incorrect street, city, town or state.
 

 In the instant case, the Chapter XI petition listed FMCC’s address as P.O. Box 219, Cleveland, Mississippi. FMCC’s correct address was P.O. Box 4685, Greenville, Mississippi. Thus, the correct address was in a city different from that listed in the petition. This is not a situation where the schedule listed the correct city but omitted the post office box number or street address. See
 
 Kreitlein,
 
 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184; and
 
 Dill v. Hamilton,
 
 167 P.2d 497. In that case, FMCC might have received the notice. Therefore, the listing of the incorrect city causes the October 1974 debt to be not duly scheduled.
 

 B. Whether FMCC Had Notice or Actual Knowledge of the Bankruptcy Proceedings.
 

 The October 1974 debt can still be discharged if FMCC had notice or actual knowledge of the bankruptcy proceedings. Bankruptcy Act § 17a(3), 11 U.S.C. § 35(a)(3) (repealed). The bankruptcy court and the district court concluded that FMCC had notice of the bankruptcy proceedings based on CFT’s agency relationship with FMCC. The bankruptcy court noted that FMCC had received notice or actual knowledge of the proceedings after the period to file timely objections to the bankrupt debtor’s discharge. The bankruptcy court reasoned, however, that CFT held implied authority to transact some business or manage some affairs on behalf of FMCC. Therefore, proper notice to CFT, the agent, was sufficient notice to FMCC, the principal. The district court agreed that FMCC had notice. The court noted that CFT and FMCC have the same parent. On that basis, the district court concluded that CFT could be FMCC’s agent for purposes of imputing notice. Accordingly, both courts held that the debt was dis-chargeable under Section 17a(3) of the Act. We disagree. CFT’s knowledge cannot be imputed to FMCC.
 

 The general rule is that notice to or knowledge of an agent may be imputed to the principal in certain situations. Notice or knowledge is imputed where the agent is acting within the scope of his authority and the knowledge pertains to matters within the scope of the agent’s authority.
 
 Curtis, Collins & Holbrook Co. v. United States,
 
 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956 (1923);
 
 Anderson v. General American Life Insurance Co.,
 
 141 F.2d 898 (6th Cir.),
 
 cert. denied,
 
 323 U.S. 798, 65 S.Ct. 554, 89 L.Ed. 637 (1944). Assuming CFT was authorized to accept installment payments on FMCC’s behalf, it does not follow that CFT was also authorized to accept legal notice on FMCC’s behalf. There is a significant difference between concluding that an agent may accept installment payments on another’s behalf and concluding that an agent is authorized to accept legal notice.
 

 The general rule for imputing an agent’s notice or knowledge is applicable in bankruptcy cases. In most of the cases where an agent’s knowledge of bankruptcy proceedings is imputed to a creditor, the agent is an attorney who has been authorized either to collect the balance due on a defaulted debt or represent the creditor in bankruptcy proceedings.
 
 American Southern Trust Co. v. Vester,
 
 183 Ark. 9, 34 S.W.2d 747 (Ark.1931);
 
 Wise v. Curdes,
 
 219 Ind. 606, 40 N.E.2d 122 (Ind.1942);
 
 Conley v. Lake St. Louis Estates Co.,
 
 579 S.W.2d 163 (Mo.App.1979);
 
 Keefauver v. Hevenor,
 
 163 App.Div. 531, 148 N.Y.S. 434 (1914);
 
 Interstate Credit League v. Widdison,
 
 50 Idaho 493, 297 P. 1106 (Idaho 1931);
 
 Application of Keilly,
 
 262 N.Y.S.2d 310, 47 Misc.2d 99 (1965);
 
 Honig v. Minotti,
 
 62 N.Y.S.2d 261, 270 App.Div. 947 (1946).
 

 
 *458
 
 An agent’s knowledge may also be imputed to a creditor even if the agent is not an attorney. Where the agent is not an attorney, however, courts strictly follow the general rule that the agent must acquire the notice or knowledge while acting within the scope of his authority and the notice or knowledge must pertain to matters within the scope of the agent’s authority. In
 
 Bank of Wrightsville
 
 v. Four
 
 Seasons,
 
 21 Ga.App. 453, 94 S.E. 649 (Ga.App.1917), the knowledge of a cashier was imputed to the bank where the cashier had discussed notice of the bankruptcy proceedings with others in the bank. In
 
 City National Bank of Decatur v. Greene,
 
 279 S.W. 893 (Tex.Civ.App.1926), the knowledge of a corporation’s president and vice-president was imputed to the corporation. Similarly, in
 
 Park Yorkville Corp. v. Mendley,
 
 73 N.Y.S.2d 856 (City Ct.1947), the agent’s knowledge was imputed where the agent was employed to collect the debt.
 

 In our view, the record below does not indicate that CFT had actual or implied authority either to collect the entire outstanding balance of the October 1974 debt, represent FMCC in any bankruptcy proceeding, or receive legal notices on behalf of FMCC. In this case, it is uncontroverted that CFT and FMCC share a common parent company, Ford Motor Company; and that customers have left installment payments and “extension agreements” at CFT which were intended for FMCC. However, neither the relationship between FMCC and CFT nor the repository functions performed by CFT support the district court’s conclusion that notice to or knowledge possessed by CFT should be imputed to FMCC. The relationship between CFT and FMCC is essentially one of two siblings. This relationship, standing alone, does not support the imputation of notice or knowledge to FMCC. We might be more inclined to impute notice if FMCC was the parent company of CFT.
 

 CFT merely acted as a repository in accepting the installment payments and extension agreements. The authorization to perform these repository functions is significantly different from the authorization to take affirmative action and collect the entire outstanding balance on an overdue debt. Moreover, the sibling relationship between CFT and FMCC does not increase the significance of CFT’s repository function. There was uncontroverted testimony that customers left installment payments for FMCC with dealers who had no Ford Motor Company affiliation. Therefore, we conclude that notice to CFT should not have been imputed to FMCC.
 

 There is also no basis for a claim that CFT had apparent authority to receive legal notice on behalf of FMCC. A principal is responsible for the acts of an agent within his apparent authority only where the principal’s conduct has created in a third party a reasonable belief that the agent has such authority.
 
 V. L. Nicholson Co. v. Transcon Investment & Financial Ltd.,
 
 595 S.W.2d 474 (Tenn.1980). Here the debtors, in the short interval between the purchase of the equipment and the filing of the bankruptcy petition, had no contact with FMCC and made no payments to CFT. Thus, FMCC neither made representations to the debtors nor acquiesced in a course of dealing between the debtors and CFT which might justify the debtors in regarding CFT as FMCC’s agent for the purpose of receiving legal notice.
 

 II. Did FMCC Have a Perfected Security Interest
 

 The next issue is whether FMCC’s security interest in the equipment purchased under the October 1974 installment contract was perfected. FMCC filed the financing statement in Tallahatchie County, Mississippi. However, the equipment was located in Sunflower County, Mississippi. The key question is whether the security interest was perfected by the filing in Tallahatchie County.
 

 The bankruptcy court relied upon the Mississippi Uniform Commercial Code (“UCC”) and held that FMCC did not have a perfected security interest in the equipment. The collateral which secured the October 1974 installment contract was “equipment used in farming operations.”
 

 
 *459
 
 Section 75-9-401(l)(a) of the Mississippi Code describes where a financing statement must be filed to perfect a security interest in farm equipment.
 
 [4]
 
 The financing statement should be filed in the county of the debtor’s residence if the debtor is a resident of Mississippi. Miss.Code Ann. § 75-9-401(l)(a). If the debtor is not a resident of Mississippi, however, then the financing statement is properly filed only in the county where the farm equipment is located.
 
 Id.
 

 The bankruptcy court reasoned that the financing statement would have been filed properly if the farm equipment had been located in Tallahatchie County. Therefore, by implication, the court concluded that the debtor was a non-resident of Mississippi. The court also held that the debtor did not have notice of the contents of the financing statement.
 

 The district court affirmed the bankruptcy judge’s conclusion that FMCC did not have a perfected security interest. The district court did hold, however, that FMCC had a perfected security interest in the equipment purportedly sold to Weaver Farms in March 1975. This equipment was delivered to Maloney, Weaver Farms’ farm manager, whose address was in Tallahat-chie County, Mississippi.
 

 On appeal, FMCC argues that its security interest in the equipment purchased under the October 1974 contract was perfected. Specifically, FMCC argues that the financing statement was properly filed because the residence of the debtor, Weaver Farms, was in Tallahatchie County, Mississippi. The bankrupts argue that the debtors were John C. Weaver and Robert Weaver, the partners of Weaver Farms. Robert Weaver resided in Memphis, Tennessee. John C. Weaver resided in North Palm Beach, Florida. Whether the financing statement was properly filed depends in the first instance on whether the debtor is the partnership, Weaver Farms or the individual partners, John C. Weaver and Robert Weaver. If the individual partners are the debtors, then they are clearly non-residents of Mississippi. On the other hand, if the partnership can be a debtor in its own right, we must decide where the partnership resides.
 

 It appears from the facts below that Weaver Farms, the partnership, was the debtor in this case. Weaver Farms was designated as the buyer on the October 1974 contract. Robert Weaver executed that contract on behalf of Weaver Farms. Moreover, the financing statement filed on January 8, 1975, listed Weaver Farms as the debtor.
 

 A partnership can be a debtor under the U.C.C. In
 
 Matter of Katz,
 
 563 F.2d 766, 768 (5th Cir. 1977), a case applying Mississippi’s version of the U.C.C., the Court held that a partnership is a legal entity. The
 
 Katz
 
 court also held that a partnership can be a debtor under the U.C.C.
 
 Id.
 
 The court reasoned as follows:
 

 Section 9-105(l)(d) defines a debtor as “the person who owes payment or other performance of the obligation secured.” Section 1-201(30) defines “person” to include “an individual or an organization.” And § 1-201(28) defines “organization” to include a partnership.
 
 Katz,
 
 563 F.2d at 768.
 

 Other courts have used this analysis in holding that a partnership may be a debtor under the U.C.C.
 
 See Loucks v. Albuquerque National Bank,
 
 76 N.M. 735, 418 P.2d 191 (N.M.1966);
 
 In Re Holmes,
 
 9 U.C.C.Rep. 1160 (Bankr.Ct.W.D.Mich.1971);
 
 In Re Lockwood,
 
 16 U.C.C.Rep. 195 (Bankr.Ct.D.Conn.1974);
 
 In Re Humphrey,
 
 12 U.C.C.Rep. 986 (Bankr.Ct.E.D.Tenn.1973). Therefore, Weaver Farms can be a debtor in its capacity as a partnership.
 

 
 *460
 
 The next inquiry is whether Weaver Farms is a resident or non-resident of Mississippi. A “partnership” is included in the U.C.C.’s definition of an “organization”. Miss.Code Ann. § 75-1-201(28). An organization’s residence for purposes of the U.C.C. is defined in Miss.Code Ann. § 75-9-401(6) as:
 

 ... [i]ts place of business if it has one, or its chief executive office if it has more than one place of business. Miss.Code Ann. § 75-9-401(6).
 

 Therefore, the location of Weaver Farms’ place of business determines whether it is a resident or non-resident of Mississippi.
 

 The U.C.C. does not define “place of business.” Commentators note, however, that several tests are plausible. One test measure the quantity of work accomplished at a particular place. J. White and R. Summers,
 
 Uniform Commercial Code,
 
 § 23-14 at 946 (2d ed.). Another test focuses on “notoriety,” that is, the extent to which others know that the debtor does business at the location in question.
 
 Id.
 
 Still another test focuses on Whether the debtor actually conducts manufacturing and commercial activities in a particular place. R. Anderson,
 
 Uniform Commercial Code,
 
 § 9-401:16 at 440 (2d ed.). Some courts have adopted the notoriety test,
 
 see In Re McQuaide,
 
 5 U.C.C. Rep. 802 (Bankr.Ct.D.Vt.1968), while other courts have considered whether the debtor conducts manufacturing and commercial activities in a particular place.
 
 See In Re P.S. Products Corp.,
 
 7 U.C.C.Rep. 411 (E.D.N.Y.),
 
 aff’d. sub nom., P.S. Products Corp. v. Equilease Corp.,
 
 435 F.2d 781 (2d Cir. 1970). However, neither this Circuit nor the Fifth Circuit has adopted either of these tests. For purposes of this appeal, we do not find it necessary to adopt a test for what constitutes a debtor’s place of business under the U.C.C.
 

 Under any of the previously articulated tests, we conclude that Weaver Farms’ place of business is in Sunflower County, Mississippi.
 
 [5]
 
 Weaver Farms’ property is located in Sunflower County, Mississippi. Moreover, the equipment purchased under the October 1974 installment contract was located in Sunflower County, Mississippi.
 

 The facts which support our conclusion that Weaver Farms’ place of business is in Mississippi also support the conclusion that Weaver Farms is a resident of Sunflower, Mississippi pursuant to Miss.Code Ann. § 75-9 — 401(6). Thus, the financing statement should have been filed in Sunflower County, the county of Weaver Farms’ residence and place of business. Miss.Code Ann. § 75-9-401(l)(a). However, FMCC filed the financing statement in Tallahat-chie County, Mississippi.
 

 FMCC’s security interest in this equipment is unperfected because FMCC filed in the wrong county.
 
 Uniroyal, Inc.
 
 v.
 
 Universal Tire & Auto Supply Co.,
 
 557 F.2d 22 (1st Cir. 1977). In
 
 Uniroyal,
 
 the debtor used a Boston, Massachusetts address on its letterhead, billhead, federal and state tax returns, its own checks, the Certificate of Condition filed annually with the Office of the Commonwealth, and in the telephone directory. The debtor, however, was actually located in Brookline, Massachusetts.
 
 *461
 
 The court in
 
 Uniroyal
 
 held that the creditor did not perfect its security interest by filing the financing statement in Boston, Massachusetts. As in
 
 Uniroyal,
 
 the financing statement in this case was filed in the wrong county. Therefore, FMCC did not perfect its security interest in the equipment purchased in October 1974.
 
 [6]
 

 III. Whether Robert Weaver is Personally Liable to FMCC
 

 The final issue on this appeal is whether Robert Weaver, as debtor in possession, is personally liable to FMCC. FMCC argues that Robert Weaver willfully and deliberately violated his fiduciary duties as debtor in possession by failing to safeguard the assets of Weaver Farms.
 

 A debtor in possession is a debtor who continues in possession of his property where no receiver or trustee is appointed. Bankruptcy Act, § 342,11 U.S.C. § 742 (repealed); Bankruptcy Rule 11 — 18(b); 8
 
 Collier, supra,
 
 ¶ 6.30[1] at 917. A debtor in possession has all the title and exercises all the powers of a trustee who is appointed under the Bankruptcy Act. Bankruptcy Act, § 342. A debtor in possession, however, is at all times subject to the control of the court.
 
 Id.
 

 The duties of a debtor in possession are similar to those of a trustee in bankruptcy. A debtor in possession does not have the administrative duties of a trustee in a Chapter XI case. 8
 
 Collier, supra,
 
 ¶ 6.32[1] at 929. However, he does have the broad duties incidental to his title, possession, and powers as debtor in possession.
 
 Id.
 
 Specifically, a debtor in possession has the duty to protect and conserve the property in his possession for the benefit of creditors.
 
 Matter of Halux,
 
 665 F.2d 213, 216 (8th Cir. 1981).
 
 See United States ex rel. Willoughby, Trustee v. Howard,
 
 302 U.S. 445, 450, 58 S.Ct. 309, 312, 82 L.Ed. 352 (1938);
 
 In re Custom Made Tires Corp.,
 
 108 F.2d 172 (2d Cir. 1939);
 
 Carson, Pirie, Scott & Co. v. Turner,
 
 61 F.2d 693, 694 (6th Cir. 1932). 8
 
 Collier, supra,
 
 ¶ 6.32[1] at 929.
 

 A trustee in bankruptcy may be liable for violations of his fiduciary duties. A trustee in bankruptcy can be liable in his official capacity or individually. A bankruptcy trustee is liable in his official capacity for acts of negligence.
 
 Mosser v. Darrow,
 
 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951);
 
 Sherr v. Winkler,
 
 552 F.2d 1367 (10th Cir. 1977) (Chapter X proceeding);
 
 In re Johnson,
 
 518 F.2d 246 (10th Cir. 1977),
 
 cert. denied, sub nom., Clark v. Johnson,
 
 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975) (Chapter XII proceeding);
 
 United States v. Sapp,
 
 641 F.2d 182 (4th Cir. 1981). The applicable standard is the exercise of due care, diligence and skill both as to affirmative and negative duties.
 
 In re Johnson,
 
 518 F.2d at 251. The measure of care, diligence and skill required of a trustee is that of “an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view.”
 
 Id.
 
 Mistakes in judgment cannot be the basis of a trustee’s liability in his official capacity.
 
 Sherr v. Winkler,
 
 552 F.2d at 1375. The failure to meet the standard of care, however, subjects the trustee to liability in his official capacity.
 
 In re Johnson,
 
 518 F.2d at 251. A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties.
 
 Sherr v. Winkler,
 
 552
 
 *462
 
 F.2d at 1375.
 
 Sapp,
 
 641 F.2d at 182. The principles governing the liability of a bankruptcy trustee are applicable to a debtor in possession.
 

 We can find Robert Weaver liable in his official capacity only if he was negligent and personally liable only if he willfully and deliberately violated his fiduciary duties. The record below makes such a determination difficult, if not impossible. FMCC, in a Complaint received by the bankruptcy court on August 25, 1977, claimed that Robert Weaver negligently or purposely lost or converted the equipment purchased under the October 1974 installment contract. The bankruptcy judge treated FMCC’s claim as one for a debt which was nondischargeable under Section 17a(2) of the Bankruptcy Act.
 
 [7]
 
 The bankruptcy judge ruled that Section 17a(2) did not apply to a debtor’s conduct after the filing of the Chapter XI petition. In response to FMCC’s Motion For a New Trial, the bankruptcy court held that Robert Weaver’s negligence was a moot question since FMCC did not have a perfected security interest. The court reasoned that Robert Weaver, as debtor in possession, had no obligation to preserve the equipment purchased in October 1974. The district court affirmed the judgment of the bankruptcy court and stated that “[w]hile Robert L. Weaver was casual and probably negligent in handling and inventorying the property sold by Cleveland Ford Tractor and financed by FMCC, it cannot be said he was guilty of willful conversion of the property.” (App. at 85).
 

 Neither the bankruptcy court nor the district court directly held that Robert Weaver acted negligently in his capacity as debtor in possession. Nor did either court below find that Robert Weaver acted willfully and deliberately in violation of his fiduciary duties. Accordingly, we remand this case to the district court for a determination of whether Robert Weaver, in his capacity as debtor in possession, was negligent or acted willfully and deliberately in violation of his fiduciary duties to the creditors of the Weaver Farms estate.
 
 [8]
 

 IV. Conclusion
 

 The October 1974 debt was not discharged because the debt was not duly scheduled and FMCC did not have notice or actual knowledge of the bankruptcy proceedings. Moreover, FMCC did not have a perfected security interest in the equipment purchased under the October 1974 installment contract. Finally, we are unable to determine on the record before us whether Robert Weaver, as debtor in possession, was negligent or willfully and deliberately violated his fiduciary duties.
 

 Accordingly, the judgment of the district court is affirmed in part, reversed in part, and the case is remanded to the district court for proceedings consistent with this opinion.
 

 [1]
 

 . Section 371 of the Bankruptcy Act of 1898, as amended, provides:
 

 The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 17 of this Act, are not dischargea-ble. 11 U.S.C. § 771 (repealed).
 

 The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.
 
 The relevant transactions in this case occurred in 1974 and 1975 and are governed by the Bankruptcy Act of 1898, as amended. Thus, the references to the Bankruptcy Act throughout this opinion are to the 1898 Act and not the 1978 Act.
 

 [2]
 

 . Section 17a(3) of the Bankruptcy Act of 1898, as amended, provides in pertinent part:
 

 (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ...
 

 (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy ...
 

 11 U.S.C. § 35(a)(3) (repealed).
 

 [3]
 

 . Section 7a(8) of the Bankruptcy Act provides in pertinent part:
 

 § 7. Duties of Bankrupts, a. The bankrupt shall ...
 

 (8) prepare, make oath to, and file in court ... a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail; and a list of all his creditors, including all persons asserting contingent, unliquidated, or disputed claims, showing their residences or places of business, if known, or if unknown that fact to be stated, the amount due to or claimed by each of them, the consideration thereof, the security held by them, if any, and what claims, if any, are contingent, unliquidated, or disputed; and a claim for such exemptions as he may be entitled to ... 11 U.S.C. § 25(a)(8) (repealed).
 

 [4]
 

 . Section 75-9-401(l)(a) of the Mississippi Code provides in pertinent part:
 

 (1) The proper place to file in order to perfect a security interest is as follows:
 

 (a) When the collateral is equipment used in fanning operations, ... then in the office of the chancery clerk in the county of the debtor’s residence; or if the debtor is not a resident of this state then in the office of the chancery clerk in the county where the goods are kept. Miss.Code Ann. § 75-9-401(l)(a).
 

 [5]
 

 . Our conclusion that Weaver Farms’ place of business is in Sunflower County, Mississippi is unaffected by the fact that Weaver Farms had a mailing address in Tallahatchie County. The financing statement listed Weaver Farms’ address as Route 1, Box 90, Tutwiler, Mississippi 38963. Tutwiler is in Tallahatchie County, Mississippi. Moreover, Robert Weaver, in a letter dated October 17, 1974, stated that invoices or statements were to be sent to Bill Maloney at the address in Tutwiler. A debtor’s address, however, is not the controlling factor in the “place of business” analysis. In ITT
 
 Industrial Credit Co. v. Robinson,
 
 350 So.2d 48 (Miss.1977), for example, the debtor’s address was in Hinds County, Mississippi, while his place of business was in Rankin County. The court held that filing the financing statement in Hinds County was improper since the debtor’s place of business was in Rankin County. In
 
 P.S. Products Corp.,
 
 7 U.C.C.Rep. 411, the debtor had a listing in a Nassau County, New York telephone book, and a post office box in Nassau County. A Nassau County address was listed in the debtor’s Certificate of Incorporation. The court held that the debtor’s place of business was in Suffolk County, and that the financing statement should have been filed there.
 

 [6]
 

 . Section 75-9-401(2) of the Mississippi Code provides that an improperly filed financing statement may still be effective in certain circumstances. Section 75-9-401(2) provides in pertinent part:
 

 (2) ... a filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement. Miss.Code Ann. § 75-9-401(2).
 

 The bankruptcy
 
 court
 
 concluded that the debtor, Weaver Farms, did not have actual knowledge of the contents of the financing statements. Since this finding of fact is not clearly erroneous, it must be affirmed.
 
 See Cle-Ware Industries, Inc. v. Sokolsky,
 
 493 F.2d 863 (6th Cir.),
 
 cert. denied,
 
 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974);
 
 See also Melichar v. Ost,
 
 661 F.2d 300 (4th Cir. 1981);
 
 In Re Huntington, Ltd.,
 
 654 F.2d 578 (9th Cir. 1981).
 

 [7]
 

 . Section 17a(2), as amended, provides:
 

 (a) A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as ...
 

 (2) Are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another. 11 U.S.C. § 35(a)(2) (repealed).
 

 [8]
 

 . A trustee in bankruptcy or a debtor in possession, as a fiduciary, represents both the secured and unsecured creditors of the debtor.
 
 In re Nadler,
 
 8 B.R. 330 (Bkrtcy.E.D.Pa.1980). The trustee “primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a custodian of the property upon which they have a lien.”
 
 In re Nadler,
 
 8 B.R. at 333,
 
 quoting In re
 
 American
 
 Fidelity Corp.,
 
 28 F.Supp. 462, 471 (S.D.Cal.1939).
 

 We have previously concluded that FMCC did not have a perfected security interest in the equipment purchased under the October 1974 installment contract. Moreover, Weaver Farms had numerous secured and unsecured creditors. Consequently, Robert Weaver, as debtor in possession, did not owe the fiduciary duties solely to FMCC. Rather, he owed all Weaver Farms’ secured and unsecured creditors these duties.