In re Robert E. VAN CLOOSTERE and Maxine Van Cloostere, Debtor(s).

Bankruptcy No. BK 88–40001.

United States Bankruptcy Court,
S.D. Illinois.

Dec. 9, 1988.

**132**

James M. Wexstten, Douglas A. Antonik, Mt. Vernon, Ill., for debtors.

Neil F. Hartigan, Atty. Gen., Frank A. Hess, Asst. Atty. Gen., Springfield, Ill., for Illinois Grain Ins. Corp. and Illinois Dept. of Agriculture.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

On January 4, 1988, debtors, Robert and Maxine Van Cloostere, filed their individual bankruptcy petition under Chapter 7 of the Bankruptcy Code. Debtors are the officers and sole shareholders of Texas Junction Grain, Inc., a grain elevator in Murphysboro, Illinois. As such, debtors had executed a guaranty agreement with the Illinois Department of Agriculture (Department) in which they personally guaranteed payment of the elevator's grain obligations through the Director. Texas Junction Grain, Inc., ceased doing business on March 23, 1988, giving rise to debtors' liability on the guaranty.

Debtors failed to list the Department or the Illinois Grain Insurance Corporation (*see* Ill.Rev.Stat., ch. 114, ¶ 703) as creditors on their bankruptcy petition, and the Clerk's Office provided no notice to these creditors regarding the relevant dates for filing claims and discharge or dischargeability complaints. *See* Bankr.Rule 2002. However, on January 12, 1988, debtors' attorney communicated with the Department by letter, informing the Department that debtors had filed a personal bankruptcy petition in the Southern District of Illinois and giving the case number of the bankruptcy proceeding. On February 18, 1988, a Department official acknowledged in a letter to Texas Junction Grain, Inc., that the Department had been informed of debtors' bankruptcy and that "the situation ha[d] been reviewed with the Department's attorney...." Additionally, on February 24, 1988, Department officials met with the Van Cloosteres and their attorney to discuss potential grain shortages of Texas Junction Grain, Inc., at which time debtors gave the Department officials a copy of their bankruptcy petition.

Debtors' § 341 meeting was held on February 12, 1988, and the filing deadline for complaints under § 523(c) and § 727 was April 12, 1988. On June 24, 1988, debtors filed a motion to amend their bankruptcy schedules to list the Department and the Illinois Grain Insurance "Fund" as contingent, unliquidated and disputed creditors. The Court granted debtors' motion and ordered that the date for filing discharge and dischargeability complaints be extended to August 23, 1988, with regard to these creditors.

On August 22, 1988, the Department and the Illinois Grain Insurance Corporation filed a motion for extension of time to file complaints objecting to discharge or to determine dischargeability. Debtors oppose this motion on the basis that these creditors had notice or actual knowledge of debtors' bankruptcy in time to file discharge and dischargeability complaints before the original date set for such complaints. Debtors contend, therefore, that the provision of § 523(a)(3) allowing for discharge of unlisted debts based upon actual knowledge of the bankruptcy is applicable to bar the Department and the Illinois Grain Insurance Corporation from filing dischargeability complaints at this time.

Section 523(a)(3) provides in pertinent part:

> A discharge under section 727 ... of this title does not discharge an individual from any debt—
>
> > (3) neither listed nor scheduled ... in time to permit—
> >
> > .    .    .    .    .
> >
> > > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request* [.]

11 U.S.C. § 523(a)(3)(B) (emphasis added). A creditor seeking a determination of dischargeability under §§ 523(a)(2), (4) or (6) must file a complaint within 60 days of the first date set for the creditors' meeting or have his debt discharged. 11 U.S.C. § 523(c); Bankr.Rule 4007(c). A complaint objecting to discharge under § 727(a) must likewise be filed within 60 days of the § 341(a) creditors' meeting. Bankr.Rule 4004(a). Under § 523(a)(3), however, debts not listed or scheduled will be excepted from discharge unless the creditor had notice or actual knowledge of the bankruptcy case in time to allow for the timely filing of a claim or dischargeability complaint.

In the instant case debtors assert that the Department and the Illinois Grain Insurance Corporation acquired notice or actual knowledge of debtors' bankruptcy filing by the letter of January 12, 1988, and that they, therefore, were obligated to discern the relevant bar dates and file their dischargeability complaints prior to April 12, 1988. *See In re Alton,* 837 F.2d 457 (11th Cir.1988): creditors who have actual notice of debtor's bankruptcy filing have duty-to-inquire as to bar dates and must file dischargeability complaints within that time. In response the Department and the Illinois Grain Insurance Corporation maintain that the bar date of August 23, 1988, set by the court after amendment of debtors' schedules, was appropriate and should be enforced since notice of debtors' bankruptcy acquired by Department officials acting in their regulatory capacity was insufficient to bar a collection action by the Department, its Director, or the Illinois Grain Insurance Corporation.

While acknowledging that Department regulatory officials had actual notice of debtors' bankruptcy, the creditors assert that these officials were not agents of the Department for purposes of receiving notice and instituting bankruptcy litigation on their behalf. The creditors additionally argue that since the Department and the Illinois Grain Insurance Corporation are separate entities with separate legal capacities, Department officials had no authority to accept legal notice on behalf of the Corporation. The creditors contend, therefore, that neither the Department nor the Corporation received notice of debtors' bankruptcy as contemplated by § 523(a)(3)(B) and that they cannot be barred from filing their dischargeability complaints on this basis.

The creditors' argument requires the Court to examine the relevant statute to determine the relationship between the Department and the Illinois Grain Insurance Corporation and the scope of their authority and duties under the statute. The Corporation was established pursuant to Section 3 of the Illinois Grain Insurance Act (Act) as a "political subdivision, body politic and municipal corporation." (Ill.Rev.Stat., ch. 114, § 703). The governing powers of the Corporation are vested in the Board of Directors, which is composed of the Director of the Department of Agriculture, the Attorney General, a designee of the State Treasurer, the Director of the Department of Insurance, and the chief fiscal officer of the Department of Agriculture. The Director of the Department of Agriculture serves as president of the Board of the Corporation. *See id.*

The Corporation is part of the statutory scheme designed to insure "that grain producers and claimants [are] compensated for losses occasioned by the failure of a grain dealer or grain warehouseman." Ill.Rev. Stat., ch. 114, ¶ 701. Under the Act, fees assessed and collected by the Department from licensed grain dealers and warehouse-

men are deposited in the Illinois Grain Insurance Fund. The Corporation has the responsibility to manage and invest such funds until such time as the Department directs it to disburse monies to the Illinois Grain Indemnity Trust Fund for payment to a claimant. *See* Ill.Rev.Stat., ch. 114, ¶¶ 703(b)(5)–(8), 706. The Corporation, however, does not determine whether funds should be paid and has no power to seek reimbursement for funds disbursed under the Act. Rather, the authority to make this determination and the power to act to recover funds are reserved to the Director and to the Department of Agriculture, respectively. *See* Ill.Rev.Stat., ch. 114, ¶¶ 709(a), 710(c).

In the instant case, the creditors' claim against debtors arose from the guaranty agreement between debtors and the Director. The Illinois Grain Insurance Corporation was not itself a party to that agreement and, as noted above, has no independent authority under the statute to recover funds paid out to claimants following failure of a grain facility. While the Corporation may have a claim against debtors through the Director who serves as president of its Board of Directors, this claim is dependent on the Director's rights under the guaranty agreement with debtors and cannot be enforced by the Corporation directly. For this reason, the Court finds no merit in the creditors' assertion that the Corporation, as an entity separate from the Department, cannot be bound by notice to Department officials. Rather, if the letter to the Department of January 12, 1988, constituted notice to the Department sufficient to bar its complaint under § 523(a)(3)(B), then the Corporation would likewise be barred from filing a nondischargeability complaint.

With regard to the sufficiency of notice to the Department, the creditors assert that the actual notice of debtors' bankruptcy acquired by Department regulatory officials could not be imputed to the Department or its Director because these regulatory officials, who were responsible for examining the licensee grain facility, had no capacity as agents to receive legal notice on behalf of the Department. The credi-

tors rely on the case of *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982), in which the court held that a bankruptcy notice sent to an agent who accepted installment payments on behalf of the plaintiff creditor was insufficient to bar the creditor's dischargeability complaint on the basis of actual notice under § 523(a)(3)(B). The *Weaver* court observed that the agent acted as a repository in accepting installment payments and stated:

> The authorization to perform these repository functions is significantly different from the authorization to take affirmative action and collect the entire outstanding balance on an overdue debt.

*Id.* at 458.

While the creditors assert that *Weaver* applies to preclude imputing the notice acquired by Department regulatory officials to the Director, the facts of the instant case make it distinguisable from *Weaver*. The testimony and documentary evidence presented at the hearing on this motion establish that notice of debtors' bankruptcy was received, not only by examining officials of the Department, but also by the Department's attorney, who represented both the Director and the Department in determining action to be taken regarding debtors and the potential grain shortages of Texas Junction Grain, Inc.

■ As a general rule, notice to a creditor's attorney of a bankruptcy filing will be sufficient if the attorney received knowledge of it while representing his client in enforcing a claim against the bankrupt. *In re Price*, 79 B.R. 888 (Bankr. 9th Cir.1987); *see Ford Motor Credit Co. v. Weaver*; 3 *Collier on Bankruptcy*, § 523.13[5][c], at 523–87 to 523–88 (15th ed. 1988); *see also In re Walker*, 91 B.R. 968, 18 B.C.D. 357 (Bankr.N.D.Utah 1988). Courts have found exceptions to this rule when, for example, notice was sent to the attorney on behalf of another client/creditor (*see Maldonado v. Ramirez*, 757 F.2d 48 (3d Cir. 1985)) or the attorney's representation of the creditor did not involve debt collection (*see In re Fauchier*, 71 B.R. 212 (Bankr. 9th Cir.1987)). Neither of these exceptions

applies in the instant case, as the Department's attorney is employed to represent the Department and the Director in fulfilling their statutory duties, which would include the enforcement of their rights under the guaranty with debtors.

■ The Department's letter of February 18, 1988, to Texas Junction Grain, Inc., stated that the Department's attorney, after reviewing the situation regarding debtors' bankruptcy, felt "that the facility may be in jeopardy due to your current status." The letter further stated that "the firm may be in violation of section 4(f) of the Grain Dealers Act," which requires that a licensee have sufficient financial resources to pay producers for grain purchased from them (*see* Ill.Rev.Stat., ch. 111, ¶ 304(f)). Thus, the letter indicated the Department's awareness, through its attorney as agent, of debtors' bankruptcy and the potential claim of the Department against debtors by reason of their guaranty of the debts of Texas Junction Grain, Inc. While the testimony at the hearing on the motion showed that the Department was not aware of the exact amount of grain shortages giving rise to debtors' liability under the guaranty until after the bar date of April 12, 1988, the Department could have filed for an extension of time prior to that date to enable it to bring its dischargeability complaint once a final determination of debtors' liability was made.

■ Based on the evidence at trial, the Court finds that the Department and its Director had notice or actual knowledge of debtors' bankruptcy in time to take appropriate steps to protect their rights against debtors before the bar date of April 12, 1988. Despite the lack of formal notice of the proceeding due to debtors' failure to schedule them as creditors, the Department and the Illinois Grain Insurance Corporation could not sit idly by once they had actual notice of the bankruptcy proceeding. *Cf. In re Walker:* creditors whose attorney

knew of bankruptcy case could not rely on the fact that they never received formal notice in attempting to have debt declared nondischargeable. It is consistent with the "fresh start" policy of the Bankruptcy Code to severely constrain the period for filing dischargeability actions, and, while due process requires that creditors be given notice so that they may protect their rights, creditors with actual notice of a bankruptcy proceeding must act to ascertain and meet the bar dates set by the Court in order to preserve their rights. *In re Walker; In re Alton.*[1]

Because the creditors had actual notice of the bankruptcy proceeding in time to file their discharge and dischargeability complaints prior to the original bar date of April 12, 1988, they cannot rely on the Court's order extending the time for filing such complaints until August 23, 1988. A court has no discretion to extend the time period for filing such complaints after the initial period has expired, and the Court's order extending the bar date was thus erroneous. *See In re Lochrie,* 78 B.R. 257 (Bankr. 9th Cir.1987); *In re Lewis,* 71 B.R. 633 (Bankr.N.D.Ill.1987). For the reasons stated, the motion of the Department and the Illinois Grain Insurance Corporation for extension of time is untimely and must be denied. The creditors' complaint filed subsequent to their motion for extension will be stricken.

IT IS ORDERED, therefore, that the creditors' motion for extension of time is DENIED and their complaint for determination of dischargeability is STRICKEN.

---

1. There has been no allegation that debtors' omission of the Department and the Illinois Grain Insurance Corporation from their bankruptcy petition was anything but inadvertent due to the complicated nature of the case. *Cf.*

*In re Alton* in which the court discussed the "disturbing aspect" of the debtor providing actual notice to a creditor three weeks after filing his bankruptcy petition omitting the creditor.