In re **HOT SHOTS BURGERS & FRIES, INC.**, Debtor.

M. Randy **RICE**, Trustee, Plaintiff,

v.

FAS FAX CORPORATION, Crown Leasing, Inc., Supreme Fixture Company, Inc., JEH Leasing Corp., Asher Restaurant Equipment Sales & Service, Inc., Twin City Bank, Union Bank of Benton, and Wheelees, Inc., Charles Darwin Davidson, as Trustee for Luis E. Salazar and Thomas J. Houlihan, and Richard Cox, as Trustee for Edward A. Salazar, Defendants.

Bankruptcy No. 91–41298M.
Adv. No. 92–4130M.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

March 27, 1995.

Keith L. Grayson, Little Rock, AR, for Charles D. Davidson.

Abraham W. Bogoslavsky, Twin City Bank, Little Rock, AR, for Twin City Bank.

Randy M. Rice, Trustee, Little Rock, AR.

Floyd A. Healy, Little Rock, AR, for Union Bank of Benton.

W. Frank Morledge, Forrest City, AR, for Wheelees, Inc.

Charles W. Baker, Jr., Little Rock, AR, for Randy Rice, Trustee.

Scott T. Vaughn, N. Little Rock, AR, for Union Bank of Benton.

Ron L. Goodman, Little Rock, AR, for the Salazars.

*MEMORANDUM OPINION*

JAMES G. MIXON, Chief Judge.

On May 28, 1991, Hot Shots Burgers & Fries, Inc., (debtor) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. The case was converted to a proceeding under Chapter 7 and M. Randy Rice was appointed trustee. On August 21, 1992, the trustee filed a complaint seeking a determination as to the correct distribution of proceeds from the sale of a modular building. The modular building was sold by Wheelees, Inc., (Wheelees) in 1987 to Edward A. Salazar, Luis E. Salazar and Thomas J. Houlihan. Wheelees claims it is entitled to the proceeds of the sale because it has a perfected security interest in the proceeds.

In an order entered March 23, 1994, it was determined that the modular building was personal property and not real property. *Rice v. Fas Fax Corp. (In re Hot Shots Burgers & Fries, Inc.)*, 169 B.R. 920, 924–25 (Bankr.E.D.Ark.1994). The Court also found that the owners of the modular building were not parties to the action and ordered the trustee to join Edward A. Salazar, Luis E. Salazar, and Thomas J. Houlihan to this adversary proceeding. Each of the three owners had a Chapter 7 proceeding pending at the time this adversary proceeding was filed; therefore, on June 15, 1994, the trustee filed an amended complaint joining Charles D. Davidson, as trustee for Luis E. Salazar and Thomas J. Houlihan and joining Richard Cox, as trustee for Edward Salazar. The trustees for each of the individuals challenge Wheelees' claimed security interest on the ground that Wheelees failed to properly perfect its security interest. A trial was held on the amended complaint on December 6, 1994, and the Court took the matter under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) (1988), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## BACKGROUND

For clarity, relevant portions of this Court's previous decision are quoted below:

The debtor was a closely-held corporation that was engaged in the "fast food" business beginning in 1986.

The debtor was operated by Edward Salazar, Luis Salazar, and Thomas Houlihan (collectively "the individuals"), although the stock in the corporation was owned by their wives. The modular building in question was originally purchased by Wheelees from Mobi International in Forrest City, Arkansas. Wheelees used the modular building in the operation of a fast food restaurant in Forrest City under the name Wheelees.

The modular building was sold by Wheelees in April 1989 for the sum of $50,000.00. The evidence concerning the sale is confusing because sometimes the transaction appears to be between Wheelees and Edward Salazar, Luis Salazar and Thomas Houlihan, and other times between Wheelees and the debtor corporation, Hot Shots. For example, the modular building was sold by Wheelees for the total sum of $50,000.00. Wheelees received $10,000.00 in cash at the time of the sale. Edward Salazar testified regarding the down payment as follows:

Q: ... Can you testify positively as to who paid the ten down?

A: No, not positively.

Q: Could it have been that one of you individually, such as your father, paid the ten down?

A: I would think he probably did—yeah.

Record at 67.

Wheelees executed a bill of sale conveying the modular building to Edward A. Salazar, Luis E. Salazar, and Thomas J. Houlihan, individually. The $40,000.00 balance was to be paid according to the terms of the promissory note payable to Wheelees and executed by Edward A. Salazar, Luis E. Salazar, and Thomas J. Houlihan, individually. The note provided for payments of $1,000.00 each month until paid in full. All payments made on the note in 1990 were made from Hot Shots Burgers & Fries, Inc.'s bank account.

In order to secure payment of the $40,000.00 note, Edward A. Salazar, Luis E. Salazar, and Thomas J. Houlihan executed a combination financing statement and security agreement, conveying a security interest in the modular building to Wheelees. The financing statement was recorded on April 21, 1989, in the office of the Circuit Clerk of St. Francis County, Arkansas, and recorded on April 26, 1989, in the office of the Secretary of State.

. . . .

Edward Salazar testified that "they" operated a restaurant in the modular building in Forrest City for approximately one year before he decided to move the building to a new location in Bryant, Arkansas. In order to accomplish the move it was necessary to terminate a lease of the real property where the building was situated in Forrest City. The lease agreement was made by virtue of an assignment of an existing lease from Thomas B. Devazier to Edward A. Salazar, Luis E. Salazar, and Thomas J. Houlihan. The documents terminating the lease referred to the lessees as Edward A. Salazar, Luis E. Salazar and Thomas J. Houlihan, individually. The lessor received $11,200.00 consideration for the termination of the lease, which was paid by two cashier checks on which Luis Salazar was indicated as the remitter.

Edward Salazar testified that the debtor corporation owned the building in Bryant. He also testified that when he used the word "we" he was referring to Hot Shots Burgers & Fries, Inc. He stated:

No, no I mean, we worked for the company, we owned the company, and the company owned—. It's one of those things where I always felt that Hot Shots was an extension of myself. At least, you know, it's something I created in my mind and I made it physically happen. So I have a hard time with them being really separated. I always felt that—you know, I was always there.

Record at 125–26. There was no testimony or documentary evidence indicating that the modular building was ever listed on the

debtor corporation's records as an asset. There was also no documentary evidence indicating a formal transfer of title from the individuals to the corporation. The building was, however, only used in connection with the business activities of the corporate debtor, Hot Shots.

*In re Hot Shots Burgers & Fries, Inc.*, 169 B.R. at 922–23.

Thomas J. Houlihan and Edward A. Salazar both testified that they had lived in Pulaski County, Arkansas, since 1979. Edward A. Salazar also testified that the address reflected on the financing statement, # 3 Powderhorn Court, Little Rock, Pulaski County, Arkansas, was Luis E. Salazar's address at the time the financing statement was signed.

## DISCUSSION

■ The trustees contend that Wheelees has an unperfected security interest in the property because it failed to file its financing statement in the proper place. The perfection of a security interest in personal property is governed by Ark.Code Ann. § 4–9–401(1)(c) (Michie 1991), which provides that:

(1) The proper place to file in order to perfect a security interest is as follows:

. . . .

(c) ... in the office of the Secretary of State and in addition, if the debtor has a place of business in only one county of this state, also in the office of the clerk of the circuit court and ex officio recorder of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the clerk of the circuit court and ex officio recorder of the county in which he resides.

Ark.Code Ann. § 4–9–401(1)(c) (Michie 1991).

■ Since the proper place to file is determined by the debtor's place of business or, if the debtor has no place of business, the debtor's residence, the first issue to be deter-

mined is who constitutes the debtor in the context of this case.

Section 4–9–105(1)(d) of the Arkansas version of the Uniform Commercial Code defines a debtor as "the person who owes payment ... of the obligation secured ... [and] [w]here the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of this chapter dealing with the collateral." Ark.Code Ann. § 4–1–105(1)(d) (Michie 1991). Section 4–1–201(30) defines person as including an individual or an organization. Ark.Code Ann. § 4–1–201(30) (Michie 1991).

■ A corporation is an organization which may be a debtor under Article 9 of the U.C.C. *See Bank of Yellville v. Scott (In re Scott)*, 113 B.R. 516, 519 (Bankr.W.D.Ark. 1990). A corporation is a separate entity from its shareholders, officers, and the individual persons who work there. A corporation has a separate legal existence. *Gibson v. Couch (In re Russell)*, 123 B.R. 48, 50 (Bankr.W.D.Ark.1990).

In applying the definition of "debtor" to the facts in this case, the Court finds that the individuals were the debtors for purposes of Article 9 of the Uniform Commercial Code. Although the modular building was used in a restaurant business that was operated in St. Francis County, Arkansas, by the corporation, Hot Shots Burgers & Fries, Inc., the individuals owe the obligation to make payment to Wheelees and the individuals own the collateral. There was no evidence presented that the modular building was ever listed on the corporation's records as an asset, nor was there any evidence that the title was ever transferred from the individuals to the corporation.[1]

Since the individuals are the debtors in this case, the proper place to file is in the office of the secretary of state and in the office of the circuit clerk of the county of the individuals' place of business, or, if the individuals have no place of business, in the

---

1. It is not clear why the sale of the modular building was structured in the manner that it was; however, the evidence is clear that Wheelees was aware of the existence of the corporation at the time of the transaction. In addition, the financing statement reflects Wheelees' knowledge that the debtors lived in Pulaski County, Arkansas, at the time the security interest was granted.

county in which the debtors reside. Ark. Code Ann. § 4–9–401(1)(c) (Michie 1991). The individual debtors conducted the business of Hot Shots Burgers & Fries, Inc., at the St. Francis County location; however, they had no place of business as individuals. St. Francis County was the place of business of the corporation, not the individuals. The Court is persuaded by the evidence that the individuals did not have a place of business. Therefore, the financing statement must be filed in Pulaski County, Arkansas, the county of the individuals' residence. Ark.Code Ann. § 4–9–401(1)(c) (Michie 1991).

■ Wheelees filed the financing statement in St. Francis County and in the office of the Secretary of State, but it did not file in Pulaski County, Arkansas. Therefore, Wheelees' security interest is unperfected. *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 460 (6th Cir.1982); *Cummings, Inc. v. Beardsley,* 271 Ark. 596, 598, 609 S.W.2d 66, 68 (1980). Section 544(b) gives the trustee the status of a judgment lien creditor whose lien is perfected under state law as of the date of the commencement of the case. 11 U.S.C. § 544(b) (1988). As a result, the claims of the trustees of the three individuals' bankruptcy estates have priority over the unperfected security interest of Wheelees in the proceeds from the sale of the modular building.

A separate judgment will be entered in favor of the three individuals' bankruptcy trustees pursuant to Fed.R.Bankr.P. 9021.

IT IS SO ORDERED.