In re UNR INDUSTRIES, INC., Unarco Industries, Inc., Unr, Inc., Unr-Rohn, Inc., (Alabama), Unr-Rohn, Inc., (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., Unr Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.

Bankruptcy Nos. 82 B 9841—82 B 9851.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 11, 1983.

Malcolm Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for debtors.

J. William Cuncannan, Defrees & Fiske, Chicago, Ill., for asbestos-related plaintiffs.

Norman H. Nachman, Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for Trade Creditors' Committee.

## MEMORANDUM, OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This matter coming on to be heard upon the application of the official trade creditors' committee [Trade Creditors] for entry of an order modifying the operating order dated July 29, 1982, pursuant to Section 1103(c) of the Bankruptcy Code.

The Court having examined the pleadings filed in this matter, having heard the argument of counsel and the Court being fully advised in the premises;

The Court Finds:

1. On July 29, 1982, the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, and on July 29, 1982, the Court entered an Order pursuant to Section 1108 of the Bankruptcy Code which continued the debtor in possession and recognized DAVID S. LEAVITT, Chairman of UNR Industries, Inc., as the designated party to act on behalf of the Debtors. Said Order provides in relevant part as follows:

3. In connection with the operation of the businesses of the Debtors, they shall have full power and authority:

(a) To employ, discharge and fix the compensation, salaries and wages for all managers, officers, directors, agents, employees and servants of the Debtors, as they may deem necessary and advisable for the proper operation of the Debtors' business and the management, preservation and protection of its property;

(b) To pay and satisfy out of any funds now or hereafter coming into the Debtors' possession all claims for wages, salaries and compensation of all managers, agents, employees and servants for services heretofore rendered wherein the same would be entitled to priority under the provisions of the Bankruptcy Code;

(c) To buy and sell merchandise, supplies and other property necessary and essential for the Debtors' operations, and to render services for cash or on credit;

(d) To purchase or otherwise acquire for cash or on credit such materials, equipment, machinery, supplies, services or other property as it may deem necessary and advisable in connection with the operation of the business and the management and preservation of the Debtors' property, and to pay for any such purchases made on credit when due;

(e) To enter into any contracts incidental to the normal and usual operation of the Debtors' businesses and the management and preservation of their property;

(f) To keep the property of the Debtors' estates insured in such manner and to such extent as it may deem necessary and advisable, and to pay such premiums as may be or become due thereon;

(g) To collect and receive all rents, issues, income and profits, and all outstanding accounts, things in action and credits due or to become due to the within estates, and to hold and retain all monies thus received to the end that the same may be applied under this or different or further orders of this Court;

(h) To pay and discharge out of any funds now or hereafter coming into the hands of the Debtors all taxes and similar charges lawfully incurred in the operation of said businesses and the preservation and maintenance of said property since the filing of said Chapter 11 petition.

On July 29, 1982, the U.S. Trustee was directed to appoint a committee of trade creditors, and on August 2, 1982, said Committee was appointed. On August 9, 1982, said Committee was given leave to retain the law firm of Nachman, Munitz & Sweig.

2. On October 13, 1982, DAVID S. LEAVITT, as the designated officer to act on behalf of the Debtors, wrote a letter to Dennis Diczok, Vice President of Citibank and a member of the Trade Creditors' Committee. Said letter modified the above-described operating order, as follows:

1. The Debtors in Possession will submit proposals for capital expenditures in excess of $50,000 to the Subcommittee for its review.

2. The Debtors in Possession will give the Subcommittee prior notice of any commitments to purchase raw steel inventory, if, as a result of such a commitment, the Debtors in Possession will exceed amounts budgeted for quarterly inventory purchases by 15% of the budgeted figures.

3. The Debtors in Possession will notify the Subcommittee prior to executing leases having a face value in excess of $50,000.

4. The Debtors in Possession will notify the Subcommittee prior to granting salary increases to all individuals currently earning in excess of $50,000 per year.

5. In the event he has not already done so, Bob Penn, will give Peat, Marwick & Mitchell, the Creditors' Committee's accountants, copies of (a) the 1982 Budget together with reports, if any, showing the variance, if any, between the budget figures and results of actual operations and (b) any quarterly budget revisions and forecasts with respect to the fiscal year ending December 31, 1982.

6. Bob Penn will meet with Peat, Marwick & Mitchell on a regular basis to

discuss comparisons between budgeted expenditures and actual expenditures, preparation of future budgets, quarterly revisions of budgets, forecasts of future operations and such other matters as the Committee's accountants and the Debtors in Possession may agree upon.

7. Dennis Diczok will recommend to the full Creditor's Committee that the Committee form an Executive Committee with authority to approve transactions between the Debtors in Possession and third parties based upon offers with short time spans. Until the formation of such an Executive Committee, the Debtors in Possession will give the information described in Paragraph 1, 2, 3, and 4 to Tom Benton.

8. The Debtors in Possession will notify the committee whenever its projected cash balance drops below $10.0 million.

9. Bob Penn will meet with a representative of Peat, Marwick, Mitchell & Co. on a weekly basis or as requested to review significant cash transactions.

10. The Debtors in Possession will not honor any warranty claim exceeding $50,-000 without prior notification to the Subcommittee.

3. On December 17, 1982, the Trade Creditors filed the instant application to modify Paragraph 3 of the Operating Order and to add additional provisions, as follows:

A. Paragraph 3(a) of the Order shall be amended to add:

"; provided, however, that the debtors in possession shall give the Official Creditors' Committee (Committee) at least ten (10) days' prior written notice of any proposed salary increase to be given to any individual employee currently earning in excess of $50,000 per year."

B. Paragraph 3(c) of the Order shall be amended to add:

"; provided, however, the debtors in possession shall give to the Committee at least twenty (20) days' prior written notice of (i) any capital expenditures in excess of $50,000, which notice shall be given prior to the debtors in possession making any commitments for such ex-penditures; and, (ii) any commitment to purchase raw steel inventory, if, as a result of such commitment, the debtors in possession will exceed amounts budgeted for quarterly inventory purchases by 15% of the budgeted figures."

C. Paragraph 3(e) of the Order shall be amended to add:

"; provided, however, that the debtors in possession shall give the Committee at least twenty (20) days' prior written notice of the execution of any lease imposing upon the debtors in possession an aggregate obligation in excess of $50,-000."

D. The following paragraphs shall be added to the Order:

"15. The debtors in possession shall furnish to Peat, Marwick & Mitchell (Peat Marwick), accountants for the Committee, copies of (i) the 1982 budget of the debtors, debtors in possession and their affiliates, together with reports, if any, showing the variance, if any, between the budget figures and the results of actual operations; and, (ii) any quarterly budget revisions and forecasts with respect to the fiscal year ending December 31, 1982.

"16. The debtors in possession shall meet with Peat Marwick on a regular basis to discuss comparisons between budgeted expenditures and actual expenditures, preparation of future budgets, quarterly revisions of budgets, forecasts of future operations and such other matters as Peat Marwick and the debtors in possession may agree upon.

"17. The debtors in possession shall notify the Committee immediately whenever its actual or projected aggregate cash balances drop below $10 million.

"18. The debtors in possession shall meet with representatives of Peat Marwick on a weekly basis or as requested to review significant cash transactions.

"19. The debtors in possession shall not honor any warranty claim exceeding $50,-000 without giving the Committee at least twenty (20) days' prior written notice thereof."

4. On January 10, 1983, the Plaintiff's Committee filed a response to the application of the Trade Creditors, and requested that if the Operating Order is amended as requested by the Trade Creditors, that said amendments apply to the Plaintiff's Committee as well. On January 10, 1983, the Debtor filed its response to the Trade Creditors' application and argued that pursuant to Section 1103(c)(1) the role of a creditors' committee, vis-a-vis a debtor's operation, is limited to consultation, and does not include involvement in day-to-day operations. The Debtor argues that in any event, the input and information requested by the Trade Creditors is already being provided, pursuant to the letter of agreement dated October 13, 1982, as set forth above.

The Court Concludes and Further Finds:

1. Under Section 1107 of the Bankruptcy Code, debtors in possession have all the rights, functions and duties of a Trustee appointed pursuant to Sections 1104 and 1106 of the Bankruptcy Code. Pursuant to Section 1108 of the Code, debtors in possession are automatically given leave, standing in the place of a Trustee pursuant to Section 1107, to operate their businesses after the filing of the Chapter 11. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 404; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 116, U.S. Code Cong. & Admin.News 1978, p. 5787. Recent cases indicate that Chapter 11 debtors acting in the place of the Trustee act for the benefit of creditors, and it is the debtor's duty, not creditors, to protect and preserve assets. *In re Halux, Inc.,* 665 F.2d 213, 216 (8th Cir.1981). It has been held that the courts have no authority to interfere with the day-to-day business decisions of Chapter 11 trustees. *In re Airlift Intern., Inc.,* 18 B.R. 787, 788 (Bkrtcy.D.Fla. 1982); *In re Curlew Valley Associates,* 14 B.R. 506, 512–513 (Bkrtcy.D.Utah 1981). The debtor in possession in a reorganization proceeding has all the powers of the trustee and all his liabilities. *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 461 (6th Cir. 1982); *In re Kahl Iron Foundry, Inc.,* 21 B.R. 372, 373 (Bkrtcy.E.D.Mich.1982); *In re*

*Herman Cantor Corp.,* 22 B.R. 604, 606 (Bkrtcy.D.Va.1982).

The cases and statutory language evidence a clear intent on the part of Congress to allow debtors in possession, standing in the shoes of trustees, to conduct business as usual after the filing of Chapter 11, which does not encompass day-to-day input from creditors. In fact, the duties of creditors committees are finely delineated and include the following:

(1) *consult with the trustee or debtor in possession concerning the administration* of the case:

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be has not previously been appointed under this chapter in the case; and

(5) perform such other services as are in the interest of those represented. [emphasis supplied]

If the Trade Creditors feel that the debtor is not capable of proper management then they may move for the appointment of a trustee or an examiner pursuant to Section 1104 of the Code. It should be noted that an examiner was appointed in these proceedings on September 15, 1982. As indicated in the letter dated October 13, 1982, the Debtors are providing much of the information requested by the Trade Creditors on an informal basis, and this Court has not been provided with any evidence that the Debtors have become uncooperative in the disclosure of relevant financial information. Under these circumstances, it would be unduly burdensome to the Debtors

and of little benefit to the Trade Creditors to impose the obligations detailed in the instant application. Similarly, this Court can see no reasonable basis for granting the relief requested in the response of the Plaintiff's Committee.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the application of the official trade creditors' committee [Trade Creditors] for entry of an order modifying the operating order dated July 29, 1982, be and the same is, hereby denied.