In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR-Rohn, Inc., (Alabama), UNR-Rohn, Inc., (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., UNR Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.

Bankruptcy Nos. 82 B 9841–82 B 9851.

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 6, 1984.

Nachman, Munitz & Sweig, Chicago, Ill., for Official Committee of Unsecured Creditors.

Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for debtors.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This matter coming on to be heard upon the Application of the OFFICIAL COMMITTEE OF UNSECURED CREDITORS [the Committee], represented by NACHMAN, MUNITZ & SWEIG, LTD. to appoint an appraiser with reference to various divisions and business of the above Debtors-in-Possession, and also upon the Response of the above Debtors, represented by SCHWARTZ, COOPER, KOLB & GAYNOR, CHTD. to the Committee's Application, and the Court, having examined the pleadings, and having afforded the parties

an opportunity for hearing on November 3, 1983, and being fully advised in the premises;

The Court Finds:

1. On July 29, 1982, the above Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. Since that time, Debtors have continued to operate their businesses and manage their properties as debtors in possession.

2. On October 11, 1983, the Committee filed an Application [the Application] for authority to retain INDUSTRIAL PLANTS CORPORATION [IPC] to conduct an appraisal, on both a liquidation and a going concern basis, of the machinery, equipment, inventory and real estate of each of the Debtors except for (a) Leavitt Structural Tubing Co., the Debtor in Case No. 82 B 9850, and (b) the Transportation Equipment Division of Unarco Industries, Inc., Debtor in Case No. 82 B 9842.

3. On October 31, 1983, Debtors filed their Response to the Committee's Application. In that Response, Debtors opposed the Committee's Application.

4. The Court conducted a hearing on the Committee's Application on November 3, 1983. Charles F. Kriser, a Vice-President of IPC, testified on behalf of the Committee.

5. IPC has extensive experience in appraising inventory, machinery and equipment on a forced liquidation basis. If the Court were to authorize its retention by the Committee, IPC would make both a liquidation and a going concern valuation of the machinery, equipment and inventory of Debtors (except for Leavitt Structural Tubing Co. and the Transportation Equipment Division of Unarco Industries, Inc.). IPC would also work with local real estate agents to make similar appraisals of any real estate owned by Debtors, with the exceptions noted above.

6. Certain affiliates of UNR Industries, Inc., Debtor in Case No. 82 B 9841, have not sought relief under the Bankruptcy Code. Any appraisal conducted by IPC would not include the assets of those non-debtor affiliates.

7. UNR Industries, Inc., Debtor in Case No. 82 B 9841, owns all of the issued and outstanding stock of Unarco Industries, Inc. and UNR, Inc., Debtors in Case Nos. 82 B 9842 and 82 B 9843, respectively. Unarco Industries, Inc. and UNR, Inc. each own all of the issued and outstanding stock of various other affiliates of UNR Industries, Inc., some of which affiliates have not sought relief under the Bankruptcy Code.

8. From time to time since the commencement of these cases, Debtors have sought and obtained extensions of the time in which they have the exclusive right to file a plan or plans of reorganization. The latest extension expires on September 12, 1984. A plan of reorganization for Debtor, Leavitt Structural Tubing Co., is presently on file. No other Debtor has as yet filed a plan of reorganization.

The Court Concludes and Further Finds:

1. The Committee bases its request for the appointment of an appraiser on the provisions of section 1103(c) of the Bankruptcy Code. Section 1103 of the Bankruptcy Code provides, in relevant part:

§ 1103. Powers and duties of Committees

\*     \*     \*     \*     \*     \*

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated,

and collect and file with the court acceptances of a plan;

\* \* \* \* \* \*

(5) perform such other services as are in the interest of those represented.

2. Under section 1107(a) of the Bankruptcy Code a debtor in possession has all the rights, other than the right to compensation, and shall perform all of the functions and duties of a trustee serving in a case under Chapter 11 except for those duties specified in section 1106(a)(2), (3) and (4) of the Bankruptcy Code. *See In re UNR Industries, Inc.*, 30 B.R. 609, 612 (Bankr.N.D.Ill.1983).

3. Section 1106(a)(1) requires a debtor in possession, acting as a trustee, to perform the duties of a trustee specified in subsections (2), (4), (6), (7) and (8) of section 704 of the Bankruptcy Code. Section 704(6) of the Bankruptcy Code requires a trustee (and a debtor in possession exercising the rights and powers of a trustee) to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

■ 4. This statutory obligation to keep creditors and the Court informed regarding the status of its business undergoing reorganization, is perhaps one of the most important fiduciary obligations placed upon the debtor in possession. *In re Modern Office Supply, Inc.*, 28 B.R. 943, 944 (Bankr.W.D.Okla.1983). The Committee has a right to be informed regarding the current status of each of the businesses operated by Debtors. Debtors have a corresponding obligation, within reasonable limits, to provide the Committee with the information it requests.

5. Debtors do not question the Committee's right to obtain financial information respecting their current business operations. Debtors do question, however, whether the appointment of an outside appraiser for the Committee is either a reasonable or necessary means to obtain such information at this stage in these proceedings.

■ 6. Debtors represent in their Response to the Committee's Application, that the Committee has never requested Debtors to provide it with information regarding the liquidation value of Debtors' assets. (Debtors' Response at 8.) The Court believes that the Committee should first request such information from Debtors before these estates are put to the expense of an appraisal. The Application of the Committee will be denied without prejudice. If Debtors do possess the information requested by the Committee, they should provide such information to the Committee without the necessity of Court action.

7. Debtors also object to the Committee's Application on the ground that the Application is premature, inasmuch as the time in which Debtors have the exclusive right to file plans of reorganization for the instant Debtors has not yet run. The Court agrees, and concludes that an appraisal of Debtors' physical assets is not desirable at this time.

8. The primary function of a liquidation appraisal of Debtors' physical assets would be to assist the Court and the parties in determining whether a proposed plan of reorganization satisfies the best-interests-of-creditors test set forth in § 1129(a)(7)(A)(ii) of the Bankruptcy Code. However, Debtors are not yet at the point where they must choose between reorganization or liquidation, and that question might not be settled for some time. If financial information (which should be available to the Committee) indicates that a particular division or business of these Debtors is in severe financial trouble, then the proper course is to apply to this Court for an order directing the public sale of the particular division, or the conversion of a particular Debtor's Chapter 11 case. The desirability of an appraisal of the assets of the particular division or business could be taken up at that time. But to order the complete appraisal of all the businesses and divisions of these Debtors, as requested by the Committee, would be a costly, and perhaps unnecessary, step. With administrative costs to these estates already in excess of 5.7 million dollars, the Court is

reluctant to order the requested appraisal at a projected cost to the estates of $197,500.00 where, as here, the information to be obtained would have a limited useful life, and the present need for such information is not clearly apparent from the record.

8. This proceeding constitutes a core proceeding as defined in section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C.A. § 157. 98 Stat. 333.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Application of the OFFICIAL COMMITTEE OF UNSECURED CREDITORS to appoint an appraiser be, and the same is hereby, denied without prejudice. The Application may be renewed by the OFFICIAL COMMITTEE OF UNSECURED CREDITORS if it appears to the Committee that the financial conditions attendant to any particular division or business operated by these Debtors merits the public sale or disposition of such division or business.